(78 South. 761)

No. 20864.

MALONEY et al. v. ASCHAFFENBURG et al.

(June 30, 1917. On Rehearing, April 20, 1918. Modification of Judgment May 27, 1918.)

*(Syllabus by the Court.)*

1. VENDOR AND PURCHASER ☞3(4)—SALES— CONSTRUCTION OF CONTRACT — "SALE" — "AGREEMENT FOR SALE"—PAYMENT OF EARNEST MONEY.

A written contract whereby the owner of certain described property agrees to sell it, and the other party to the contract agrees to buy it, for a stated price to be paid in cash, the act of sale to be passed within a time stipulated, the party proposing to buy depositing a sum to become a part of the purchase price, is not a complete "sale," but only an "agreement for the sale," with the payment of earnest money.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sale.]

2. BROKERS ☞37—ACTION FOR POSSESSION OF EARNEST MONEY—PARTIES DEFENDANT.

In a suit against an agent of the plaintiff for possession of earnest money deposited with the agent by a third party to bind his agreement to buy the plaintiffs' property, the plaintiffs made the depositor a party defendant and prayed for a judgment against him and the agent, decreeing the deposit forfeited, but did not ask for a money judgment against the depositor. The latter filed an exception of no cause of action, on the ground that the plaintiff

had failed to allege a formal putting in default on the agreement of sale or to allege any fact that dispensed with the formality of putting in default. The other defendant filed an answer to the merits, admitting the deposit and urging a demand in reconvention for his brokerage commission; and on the trial he admitted that the depositor had violated his agreement to purchase the property and had thereby forfeited the earnest money. *Held,* that the depositor was not a necessary party to the suit; and, although the exception of no cause of action should have been maintained as to the exceptor, he could not, by his exception, have the suit against the other defendant dismissed.

3. DAMAGES ☞85 — EARNEST MONEY — FORFEITURE.

The party who has paid earnest money, under an agreement to buy the other party's property, and who thereafter notifies the other party that he is not in a position to carry out his agreement to buy the property, thereby forfeits the earnest money.

4. BROKERS ☞64(1)—COMMISSION—SERVICES.

When a real estate agent has procured a contract for the sale of the property of his principal, with the payment of earnest money, satisfactory to the principal, and the latter afterwards consents to an extension of the time within which the sale is to be consummated, and then manifests an intention to pay the brokerage commission in any event, and the agreement of sale is thereafter violated, and the earnest money forfeited, the owner of the property must pay the agent's commission.

On Rehearing.

5. BROKERS ☞37—ACCEPTANCE OF DEPOSIT— PRINCIPAL'S SUIT TO RECOVER—PARTIES.

Where a broker is employed to sell property and closes an agreement for its sale, he becomes agent of both the seller and the purchaser; and where, as a result of such agreement, the purchaser deposits with him 10 per cent. of the amount of the purchase price, the seller may not sue the broker to recover such deposit, without properly impleading the purchaser and making him a party to such suit.

O'Niell, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Paul W. Maloney and others against Albert Aschaffenburg, Willard & Eiseman, and others. Exception of no cause of action by defendant Aschaffenburg overruled, and reconventional demands by the named defendants. Judgment dismissing plaintiffs' demand and in favor of the plaintiffs against Aschaffenburg on his reconven-

tional demand, and judgment in favor of defendant Aschaffenburg against defendants Willard & Eiseman, and in favor of Willard & Eiseman on their reconventional demand against plaintiffs, and plaintiffs appeal. Reversed, and ordered that the suit of plaintiffs be dismissed as in case of nonsuit.

Paul W. Maloney and Ed P. Foley, both of New Orleans, for appellants. Solomon Wolff and A. D. Danziger, both of New Orleans, for appellee Albert Aschaffenburg. Lazarus, Michel & Lazarus, of New Orleans, for appellee Meyer Eiseman. P. M. Milner, of New Orleans, for appellee testamentary executrix of Albert Aschaffenburg, deceased.

O'NIELL, J. This is an action for possession of a certain promissory note for $3,700, signed by Albert Aschaffenburg and Solomon Wolff, and $500 in cash, which note and cash were deposited by Aschaffenburg with the plaintiffs' agents, Willard & Eiseman, under an agreement of Aschaffenburg to buy the plaintiffs' property.

Willard & Eiseman (of whom Meyer Eiseman is the successor in business) were the real estate agents or brokers with whom the plaintiffs had listed their property for sale.

On the 24th of June, 1912, Aschaffenburg signed and submitted a written proposition, addressed to Willard & Eiseman, offering to buy the property of the plaintiffs, as follows, viz.:

"I hereby offer forty-two thousand dollars ($42,000) cash for the building No. 131 Dauphine street, described as follows. * * *

"I agree to pay taxes, both city and state, for the year 1912, and for the act of sale before Jos. Lautenschlaeger, notary public.

"This proposition is open for your acceptance until Friday, June 28th, at which time, if accepted, I will deposit in your hands 10 per cent. of the purchase price, and agree to pass the act within 60 days from notice of your acceptance."

The offer was accepted by the plaintiffs; and on the 28th day of June, 1912, Willard & Eiseman gave Aschaffenburg written notice of the acceptance, as follows, viz.:

"Your offer to buy the property No. 131 Dauphine street at forty-two thousand dollars ($42,000), plus taxes, city and state, for the year 1912, has been accepted.

"Kindly let us have your check for forty-two hundred dollars ($4,200), part of the purchase price, at which time we will issue our formal receipt."

It appears that it was not then convenient for Aschaffenburg to put up the $4,200 in cash, and he, or his attorney, Solomon Wolff, who appears to have been personally interested with Aschaffenburg in the transaction, proposed to put up $500 in cash and a promissory note for $3,700, signed by them, in lieu of the cash deposit. The proposition was made to the plaintiffs' agents or brokers, Willard & Eiseman, and was submitted by them to their principals, and accepted. Written authority was given to the agents or brokers, signed by the plaintiffs, the Maloney heirs, dated the 8th of July, 1912, to accept the deposit of $500 cash and the note for $3,700 in lieu of the cash deposit of $4,200, as follows, viz.:

"In place of forty-two hundred dollars ($4,200) cash, which was to be deposited by the purchaser of the property No. 131 Dauphine street, we hereby authorize you to accept five hundred dollars in cash, and a note due August 8, 1912, for thirty-seven hundred dollars ($3,700), representing the balance of the 10 per cent. to bind the sale, which note is to be signed by Albert Aschaffenburg and Solomon Wolff."

The $500 in cash, and the promissory note for $3,700, dated the 8th of July, 1912, signed by Albert Aschaffenburg and Solomon Wolff, made payable on the 8th of August, 1912, to the order of Willard & Eiseman, agents, were deposited with them on the 10th of July, 1912; and they gave their receipt to Aschaffenburg and Wolff, of that date, viz.:

"Received from Albert Aschaffenburg and Solomon Wolff forty-two hundred dollars ($4,200), represented as follows: (1) Five dollars ($500.00) cash; (2) Thirty-seven hundred dollars ($3,700.00), being a promissory note dated July 8, 1912, payable on August 8, 1912, to the order of Willard & Eiseman, agents, payable at their office No. 632 Gravier street, bearing upon its face the inscription as follows:

'Being a part of the deposit of $4,200, which is 10 per cent. of the purchase price of the property No. 131 Dauphine street.' Interest at 8 per cent. per annum from maturity. The whole, or forty-two hundred dollars ($4,200.00), being a 10 per cent. part of the purchase price, which is forty-two thousand dollars ($42,000.00) cash, of the property known as No. 131 Dauphine street. Ground measurements are 27' front on Dauphine street by 127' in depth, more or less. Purchaser to pay taxes, both city and state, for year 1912, and to pass the deed sixty (60) days from July 10, 1912, and pay for act of sale before Jos. Lautenschlaeger, N. P."

The property No. 131 Dauphine street belonged to the succession of the plaintiffs' parents, the deceased Dr. and Mrs. J. H. Maloney. Mr. Wolff, as attorney for Aschaffenburg (and apparently also on his own behalf), required or suggested that the plaintiffs, who were all of age, obtain a judgment from the civil district court recognizing them as the sole and only heirs at law of the deceased Dr. Maloney and his wife, and sending them into possession of the property. The judgment was obtained on the 30th of August, 1912. Four days later Mr. Wolff was notified thereof in writing by Messrs. Willard & Eiseman with the request that he make prompt settlement of the note of $3,700, which was then past due.

In his reply to Messrs. Willard & Eiseman, of date the 6th of September, 1912, Mr. Wolff intimated quite plainly that he and Aschaffenburg would not be prepared to consummate the transaction within the remaining three days allowed by the agreement, and he made it plain that he and Aschaffenburg would like to get back their deposit and call the deal off. Ignoring or evading the demand for payment of the $3,700 note, he said:

"Since your Mr. Eiseman was in my office, together with Mr. Dreyfous, I have seen Mr. Aschaffenburg, and he takes precisely the same view of this matter as I do, namely, that we have made a certain contract with you, and that contract we are going to abide by, and I beg to repeat here what I have tried to say personally, I will complete the examination of the title just as rapidly as I can, but just when that will be it is impossible for me to say.

"I am now, and have been for several months, very much occupied with matters requiring immediate attention, and the attention I have heretofore given the Maloney matter has been given only because I was anxious to wind up this matter.

"I now repeat that I will finish the examination of the title just as soon as I can, but cannot say just when that will be, but if in the meantime, under the circumstances, you feel that you would prefer to cancel the contract, we hereby consent to your doing so, returning to us the $500.00 deposited with you, and the note for $3,700.00 which we gave you."

Either from a reading between the lines of that letter, or from something more that Mr. Wolff had said, Messrs. Willard & Eiseman felt assured that Mr. Aschaffenburg could not or would not carry out his agreement to buy the property within the remaining three days of the time he had allowed himself. The agents therefore wrote a very formal letter to each of the Maloney heirs, of date the 7th of September, 1912, reviewing the negotiations with Mr. Aschaffenburg and his attorney, reminding the Maloney heirs that the time within which the sale was to be made would expire on Monday, the 9th of September, and saying that they, the agents, had been advised by Mr. Wolff, as attorney for Aschaffenburg, that the title had not yet been examined, and that they, Aschaffenburg and Wolff, would not be in a position to accept the property within the time stipulated. The letter informed the Maloney heirs of Mr. Wolff's statement that, if the heirs preferred to cancel the contract and return the money and note deposited to bind the sale, Mr. Aschaffenburg would consent to the cancellation. The letter informed the Maloney heirs that the brokers or agents had consulted their own attorney and were advised that the heirs might pursue any one of the three courses, viz.: (1) Acquiesce in Mr. Wolff's suggestion, cancel the contract, and return the money and note deposited; (2) insist upon, and, if necessary, sue for, a specific performance of the contract; or (3) put Aschaffenburg in default, cause a forfeiture of the $500 cash and the $3,700 note deposited, and bring suit on the

note. The agents said in their letter that they would not suggest which course should be pursued, but they did suggest that the Maloney heirs should call at the brokers' office on Monday, the 9th of September, and advise the brokers what to do. And the brokers said, in the letter, that, unless instructed to the contrary, they would follow the advice of their attorney and request Mr. Lautenschlaeger, the notary public, to make a tender of title to Aschaffenburg on the terms specified in his agreement. The letter ended with the assertion that the brokers' commission had been earned and would be demanded, whatever course the Maloney heirs might see fit to pursue.

The Maloney heirs did not adopt any of the three suggestions made in the letter from their agents, but agreed with Messrs. Aschaffenburg and Wolff to extend the time within which the sale was to be made 60 days longer, or until the 9th of November, 1912.

Thereafter it developed that Messrs. Aschaffenburg and Wolff were unable to put up the balance of the $42,000 in cash, and they so informed Messrs. Willard & Eiseman. On the 14th of November, 1912, the latter wrote to the Maloney heirs that Mr. Wolff was ready to take title to the property, except that he was unable to raise the cash necessary to finance the deal; that he was able to pay only a fourth of the purchase price in cash; that the brokers had found a man who was willing to take the mortgage for the balance at 7 per cent. interest and $350 brokerage; that Mr. Wolff had agreed to increase the rate of interest to 7 per cent. on the note due in one year, but would not pay more than 6 per cent. on the two other notes. The agents urged in their letter that the Maloney heirs should contribute or stand the loss of the additional interest and the brokerage, amounting in all to $875, in order to put the deal through and avoid a lawsuit with Messrs, Aschaffenburg and Wolff. The

Maloney heirs consented to bear the loss of the $875 for the additional interest and brokerage, which the purchasers of the property should have borne. But it appears that, even with that concession on the part of the Maloney heirs, Messrs. Aschaffenburg and Wolff were either unable or unwilling to carry out the agreement to buy the property. They would not actually refuse to consummate the deal, but pretended that they intended to carry it out, and allowed matters to drag along, as though time or delay was of paramount importance to them.

On the 14th of December, 1912, Willard & Eiseman made a peremptory demand upon Aschaffenburg, in a letter addressed to him, as follows:

"We have been patiently awaiting some advice from you relative to your taking title to the property known as No. 131 Dauphine street, and have indulged you for practically four months. Repeated requests have been made, conferences held with your attorney, but up to this time there has been nothing but promises.

"We beg to notify you herewith that we must have an absolute statement from you not later than Monday, December 16th, fixing a date on which you will accept title. Upon indication from you, the necessary certificates will be ordered."

To that letter Mr. Wolff replied, on the 16th of December, 1912, as follows:

"Mr. Aschaffenburg has handed me your letter to him of recent date for answer and attention.

"Acting as attorney for Mr. Aschaffenburg, and for myself. I beg to say that our position in the matter has been fully explained to Mr. Meyer Dreyfous, and that Mr. Danziger is now representing us as our attorney, and we can do nothing more than to refer you to him.

"Please do not consider us wanting in courtesy, but we are taking the position we do because we can say no more than has already been said to Mr. Meyer Dreyfous."

Mr. Meyer Dreyfous, referred to in the foregoing letter, was the attorney for one of the Maloney heirs. Mr. Ed. P. Foley represented another of the heirs; and he and Mr. Dreyfous, at the request of Mr. Wolff, had aided in getting the Commercial-Germania Bank to agree to carry the mortgage notes, representing part of the purchase price of the pro-

posed sale, for Aschaffenburg and Wolff. Mr. Wolff suggested to Mr. Foley that the Maloney heirs should pay the fee of the bank's attorney, Mr. Walshe, for examining the title for the bank. Mr. Foley refused to make that concession, and Mr. Wolff replied that he would take care of that. Thereafter Messrs. Foley, Dreyfous, and Eiseman, either together or at different times, called at the office of Mr. Wolff to ascertain the cause of so much delay. Mr. Wolff explained that he had been very busy examining a number of titles in another transaction, and had therefore found it necessary to place the Maloney deal in the hands of Mr. Danziger, who had full authority in the premises, as attorney for him and Aschaffenburg. He said that when he would receive a report on the title from Mr. Danziger, although he thought he would have some difficulty in financing the transaction, he would try to have that arranged and consummate the deal if Danziger reported favorably on the title.

On the 16th of December, 1912, Mr. Foley made a written request of Mr. Wolff to consummate the transaction, and received the following reply, dated the 18th of December, viz.:

"I have your letter of the 16th instant, and I regret to say that after you and I had agreed upon the amount of cash that Mr. Aschaffenburg and I would pay on the property, the interest rate on the deferred payments, and I had agreed further to pay the fee of Mr. Walshe for re-examining the title for the benefit of the bank, my attorney, Mr. Alfred Danziger, reported to me certain defects which he had found, and, as our agreement was subject to his approval of the title, I am therefore not in a position to go ahead with this matter.

"As it is, I have placed the matter altogether in the hands of Mr. Danziger, and will abide by his instructions.

"I may add that I have spoken to Mr. Dreyfous, and he and Mr. Danziger conferred in my presence, and the answer to Mr. Dreyfous was about what I have said to you.

"I thank you for all your courtesy in this matter, and remain," etc.

From the statement in the foregoing letter that the title had to be re-examined by the attorney for the bank, it seems that the title had already been examined by Mr. Wolff or Mr. Danziger, and no defect had been discovered. The supposed defect was discovered by Mr. Danziger after Mr. Wolff had, in effect, admitted or displayed his and Aschaffenburg's inability to finance the transaction. In fact, the supposed defect was discovered between the 16th and 18th of December, that is, after Mr. Wolff wrote his last letter to Willard & Eiseman and before he replied to Mr. Foley's letter. Mr. Wolff would not say what the supposed defect in the title was, nor would Mr. Danziger divulge the secret, or give the Maloney heirs an opportunity to show that the supposed defect was not real, or to correct it if it was. When Mr. Lautenschlaeger addressed Mr. Wolff on the subject, he replied that the matter was in the hands of Mr. A. D. Danziger, his attorney, and that he would take the property "if we would make him take it," as Mr. Lautenschlaeger expressed it.

The property No. 131 Dauphine street was thereafter sold by the Maloney heirs to a Mr. Siera for $38,000. The purchaser employed Felix J. Dreyfous to examine the title and pass the act of sale; and, as a mere coincidence, that Mr. Dreyfous, after examining the title, left the matter in the hands of Mr. Danziger, who consummated the transaction for Siera.

Willard & Eiseman refused to turn over the note of $3,700 and the $500 cash to the Maloney heirs without a decree of court to protect them.

This suit for possession of the promissory note and cash deposited with the plaintiffs' agents is primarily a suit against them, Willard & Eiseman. The plaintiffs prayed in their petition that Albert Aschaffenburg be also cited as a defendant, but they did not ask for any judgment against him except a judgment decreeing the deposit forfeited and ordering Willard & Eiseman to deliver it to the plaintiffs. The plaintiffs also prayed

that the judgment to be rendered should provide that, if Willard & Eiseman should fail to deliver the note and cash within three days, then that the plaintiff should recover of and from them $4,200, with legal interest from judicial demand. But the plaintiffs did not ask, even in the alternative, that a money judgment be rendered against Aschaffenburg.

Before answering the suit, Aschaffenburg filed an exception of no cause of action, which was overruled.

Aschaffenburg and the firm of Willard & Eiseman filed separate answers. They admitted the agreement for the purchase of the property on the terms stated, and the extension of the time within which the transaction was to be consummated. They admitted that Aschaffenburg had deposited $500 in cash and the note of $3,700, in lieu of the deposit of $4,200 in cash which Aschaffenburg had obligated himself to make and that Willard & Eiseman, as agents of the plaintiffs, had authority from their principals to accept the deposit of $500 in cash and the note of $3,700 in lieu of the $4,200 cash.

Aschaffenburg's defense was and is that he was willing and ready at all times to pay the balance of the purchase price, $42,000, but that the plaintiffs were not able to give a good or valid title to the property. Assuming that the deposit he had made was earnest money, he demanded in reconvention that judgment be rendered in his favor, ordering the plaintiffs' agents, Willard & Eiseman, to return to him the deposit of $500 in cash and the note of $3,700, and condemning the plaintiffs to pay him the additional sum of $4,200, with legal interest from the date of the judgment.

Willard & Eiseman, in their answer, also set up a reconventional demand against the plaintiffs. They alleged that, as brokers in the transaction, they had earned a commission of 2½ per cent. on $42,000; and they prayed that judgment be rendered in their favor and against the plaintiffs accordingly,

that is, for $1,050, with legal interest from judicial demand, with recognition of their right to apply the deposit of $500 to that indebtedness, and with recognition of a lien and privilege in their favor on the note of $3,700 to secure the payment of the balance of the commission due.

Judgment was rendered against the plaintiffs, dismissing their demands. Judgment was rendered in favor of the plaintiffs and against Aschaffenburg on his reconventional demand for $4,200. Judgment was rendered in favor of Aschaffenburg and against Willard & Eiseman, ordering them to return to Aschaffenburg the deposit of $500 in cash and the note of $3,700. Judgment was rendered in favor of Willard & Eiseman on their reconventional demand against the plaintiffs for the brokerage commission of $1,050, with legal interest from the date of the judgment. The plaintiffs prosecute this appeal. After the appeal was taken the firm of Willard & Eiseman was dissolved, and its assets and liabilities were taken over and assumed by Meyer Eiseman, one of the members of the firm. He has been substituted for the firm as appellee in the case, without prejudice to the rights of any other of the parties.

## Opinion.

[1] The appellee Aschaffenburg contends that his exception of no cause of action should have prevailed in the district court, because the plaintiffs did not allege in their petition that they had formally put him in default on his contract, and did not allege any fact that dispensed with the necessity of putting in default. Putting in default is a prerequisite to a suit for damages for the violation of a contract, or for rescission of the contract. R. C. C. 1912. But, as far as Willard & Eiseman are concerned, this is neither a suit for damages nor a suit for rescission of the contract. The plaintiffs are suing their agents for possession of the prom-

issory note and cash received by the agents, as such, for account of the plaintiffs.

The learned counsel for the defendant Aschaffenburg contend that the deposit sued for was not put up as earnest money, but was paid to the agents of the plaintiffs as a part of the purchase price of the property. They rely upon the decision in the case of Provenzano v. Glaesser, 122 La. 378, 47 South. 688, where it was held that a sum of money deposited under an agreement similar to that of Aschaffenburg was not earnest money, but a part of the purchase price, and that such a contract was not merely an agreement to sell, but a sale. That decision cannot possibly be reconciled with either of two others on the subject that immediately preceded it, nor with one that has been rendered since. We refer to Capo v. Bugdahl, 117 La. 992, 42 South. 478; Smith v. Hussey, 119 La. 32, 43 South. 902; Legier v. Braughn, 123 La. 463, 49 South. 22. In Capo v. Bugdahl a contract whereby the owner said he thereby that day sold his property for $2,300, 10 per cent., or $230, of which had been paid the balance being payable when the act would be passed, was not a sale, but only an agreement to sell; and that the amount received was earnest money. In Smith v. Hussey, and in Legier v. Braughn, agreements very similar to that of Aschaffenburg were held to be merely contracts to purchase, with the giving of earnest money. The present Chief Justice and senior associate justice dissented from the opinion and decree rendered in Provenzano v. Glaesser. The opinion does not conform with the views expressed in the other decisions on the subject, nor with the views of the court as now constituted, and is therefore overruled.

The learned counsel for Aschaffenburg refer to certain expressions in some of the correspondence that passed between the parties hereto, indicating that the amount deposited with the agents of the plaintiffs was not earnest money, but a part of the purchase price. For example, in Aschaffenburg's agreement the amount to be deposited was referred to as 10 per cent. of the purchase price. That merely indicated what proportion of the purchase price he agreed to deposit. In the agents' notification to Aschaffenburg that his offer was accepted, the deposit was referred to as part of the purchase price. That meant merely that the agents believed the transaction would be consummated, and that the deposit would become a part of the purchase price. In the written authority given by the plaintiffs to their agents to accept the deposit of $500 in cash and the note for $3,700 in lieu of the $4,200 cash the deposit is called "the 10 per cent. to bind the sale." In the receipt given by the plaintiffs' agents to Aschaffenburg the deposit is described as "being the 10 per cent. part of the purchase price." The giving of earnest money is always intended to be a part of the purchase price if the sale be consummated; and it is, or ought to be, always intended that the sale will be consummated. Nevertheless, if earnest money has been given with an agreement to buy property, either party to the agreement is at liberty to recede from it—the one who has given the earnest, by forfeiting it, and the one who has received it by returning double the amount. R. C. C. 2463. If the deposit made by Aschaffenburg was not earnest money, to be forfeited if he failed to carry out his agreement, it was of no benefit or advantage whatever to those who accepted the proposition, and there was no reason whatever for putting up the deposit. However, the best evidence of Aschaffenburg's intention that the deposit he made was given as earnest money is the fact that in his answer to this suit he regarded it as earnest money, and demanded that double the amount be returned to him. We do not consider his pleading, in that respect, an estoppel, because it was unavailing; but we regard it as Mr. Aschaffenburg's expression of the intention

with which he made the deposit. Our conclusion is that the deposit was the giving of earnest money.

[2, 3] Aschaffenburg was not a necessary party to this suit, in which the plaintiffs are seeking only to compel their agents to give up the promissory note and $500 in cash deposited with the agents for the account of their principals. Perhaps the plaintiffs' agents, Willard & Eiseman, would have had the right, to implead the depositor, Aschaffenburg, for their own protection, if the plaintiffs had not made him a defendant. But the impleading of Aschaffenburg was merely a matter of protection to the other defendants, Willard & Eiseman, and a matter of grace to Aschaffenburg, on the part of the plaintiffs.

Willard & Eiseman, against whom the suit had to be brought, did not plead the exception of no cause of action, nor did they object to the introduction of evidence to prove the allegation that Aschaffenburg had failed to carry out his agreement and had thereby forfeited the $500 cash and the $3,700 note deposited by him with Willard & Eiseman, as agents of the plaintiff. In fact, Eiseman testified that Aschaffenburg violated his agreement to purchase the property.

Under these circumstances, Aschaffenburg, who was not a necessary party to the suit, could not have it dismissed by his exception of no cause of action, as far as Willard & Eiseman are concerned.

We cannot see what advantage Aschaffenburg had to gain by having the suit dismissed as to him, on the ground that the plaintiffs had failed to allege that he or his attorney refused to carry out the agreement, if in fact he or his attorney did refuse to carry out the agreement and did thereby dispense with the formality of being put in default. If the exception of no cause of action had been sustained by the district court, Aschaffenburg would have had to intervene in the case or file a separate suit to assert his demand for double the amount of the earnest money deposited by him. Since the issue presented by Aschaffenburg's answer and reconventional demand has been decided against him, it would now be to his advantage to have the suit against him dismissed on the exception of no cause of action, because a judgment maintaining the exception of no cause of action would have no more effect against Aschaffenburg than a judgment of nonsuit on his reconventional demand. Our opinion is that Aschaffenburg was entitled to have his exception of no cause of action maintained; because the plaintiffs did not allege that they had formally put him in default, nor allege any fact that dispensed with the necessity of putting him in default. It is true they proved a fact that dispensed with the necessity of putting Aschaffenburg in default, but that proof was admitted over Aschaffenburg's objection that the fact had not been alleged. Hence the proof was effective only against the other defendants, Willard & Eiseman. As they did not insist that Aschaffenburg be and remain a defendant in the case, and as they did not object to proof of the plaintiff's allegation that Aschaffenburg had failed to carry out his agreement and had thereby forfeited the note and money deposited with them as the plaintiffs' agents, the issue between them and the plaintiffs was tendered and decided.

On that issue, between the plaintiffs and Willard & Eiseman, the proof is all one way. In his letter, dated the 18th of December, 1912, Mr. Wolff, who had full authority to represent Aschaffenburg gave formal notice to the plaintiffs that he receded from the agreement to buy the property, or, as he expressed it, was not in a position to go ahead with the matter. The only reason he assigned was that his attorney, Mr. Danziger, had reported to him certain defects which he had found in the title, and that the agree-

ment was subject to that attorney's approval of the title. That was not a valid cause for receding from the agreement. There were no defects in the title; and the agreement was not subject to the approval of the title by the attorney referred to in Mr. Wolff's letter. It was subject only to the condition that the plaintiffs' title should be valid. The proof is that the title was undoubtedly valid. It is unnecessary to review the evidence on that subject, because the defendants Willard & Eiseman do not deny that Aschaffenburg violated his agreement to purchase the property, and thereby forfeited the cash and note which he had deposited with Willard & Eiseman as the plaintiffs' agents.

[4] As to the commission claimed by the brokers, the evidence shows that the understanding and agreement between the plaintiffs and the brokers was such that the brokers earned their commission when they obtained the contract with Aschaffenburg, even though the contract allowed Aschaffenburg to recede from it by forfeiting the earnest money. The plaintiffs were satisfied with the contract which assured them either that they would sell their property for $42,000 or collect $4,200 as a mere forfeit; and they manifested an intention to pay the commission, in any event, when they extended the time within which Aschaffenburg was to consummate the transaction. In that respect the case is quite different from that of Jordy v. Salmen Brick & Lumber Co., 121 La. 457, 46 South. 572.

The judgment appealed from is annulled; and it is now ordered, adjudged, and decreed that the defendants Willard & Eiseman, or their successor, Meyer Eiseman, deliver to the plaintiffs the promissory note signed by Albert Aschaffenburg and Solomon Wolff, for $3,700, and the $500 in cash deposited by Aschaffenburg on the 10th of July, 1912; and, in default of delivery of said note and cash to the plaintiffs within three days from the date on which this judgment shall become final, that the plaintiffs recover of and from the firm of Willard & Eiseman and Meyer Eiseman in solido $4,200, with legal interest from the 2d day of June, 1913. It is further ordered, adjudged and decreed that the firm of Willard & Eiseman, or their successor, Meyer Eiseman, recover of and from the plaintiffs the sum of $1,050, with the right to retain the deposit of $500 as a credit on said indebtedness and with legal interest on the balance, $550, from the 2d of June, 1913. The ruling of the district court on the exception of no cause of action filed by Albert Aschaffenburg is reversed, and the exception is maintained as to him, reserving any right of action he may have against the plaintiffs. The plaintiffs are to pay one half and the defendants Willard & Eiseman the other half of the costs of this suit.

LECHE, J., takes no part.

### On Rehearing.

LECHE, J. The pleadings and facts in this case are fully stated in our original opinion, and in this rehearing we are called upon to review the correctness of the legal conclusions heretofore reached by us. We held originally that plaintiffs' petition did not set forth a cause of action against Aschaffenburg for having failed either to allege that they had put Aschaffenburg in default, or to allege facts which would have dispensed them with the necessity of such putting in default. That conclusion, we are still of the opinion, was manifestly correct. But we further decided that Aschaffenburg was not a necessary party to this suit, and proceeded to render judgment upon that theory. That was the announcement of another legal conclusion in which we now believe that we committed error.

Plaintiffs in their petition, under paragraph 7, expressly allege that Willard & Eiseman

refuse to turn over to them the deposit of $4,200, notwithstanding amicable demand by petitioners, and in the prayer of their petition ask for service on Aschaffenburg as well as upon Willard & Eiseman.

The alleged reasons for which Willard & Eiseman refused to comply with plaintiffs' demand was the fear of being also held responsible by Aschaffenburg, and thus have to pay a second time, and out of their own pocket. So that it is evident that both plaintiffs and defendants Willard & Eiseman considered that Aschaffenburg should have his day in court that he might urge any claim on his part to the deposit, and the object of plaintiffs' suit was then not only to recover the $4,200, but also to obtain contradictorily with Aschaffenburg, in order that the latter might thereafter be bound by the judgment, a decree which would recognize their ownership of the fund and at the same time protect Willard & Eiseman.

Whether the sum of money deposited by Aschaffenburg with Willard & Eiseman be considered as part of the purchase price in an executory contract of sale, or as earnest money, plaintiffs, in order to recover and to be adjudged owners thereof, must of necessity either compel Aschaffenburg to perform the contract or have the deposit declared forfeited, and, in either event, Aschaffenburg is a necessary party to such a judgment.

[5] Again, Willard & Eiseman have acted in this transaction as real estate brokers, and therefore as agents of both parties; for, according to article 3016, Civil Code, a broker is considered the mandatary of both parties. We held in the case of Woods, Slayback & Co. v. Rocchi, 32 La. Ann. 210, that a broker is the agent of the original employer and becomes agent of the other party, when the bargain is definitely settled. Willard & Eiseman were therefore the agents of plaintiffs, the original employers, when they undertook to sell the property and later also became the agents of Aschaffenburg when

the latter agreed to purchase the property. It was further held by this court in Louisiana Board of Trustees, etc., v. Dupuy, 31 La. Ann. 305, that where a person is the common agent of others, and is called upon to account, there should be but one proceeding, to which all those in interest should be made parties, and their rights determined in concurso. It follows that in a suit against the agents, Willard & Eiseman, for an accounting, by plaintiffs one of the principals, Aschaffenburg, the other principal, is a necessary party.

The general rule is that any one having an actual interest in a controversy presented to a court for its determination should be made a party to the suit. Where, however, a suit incidentally involves the rights of a person who is not a party, the court may proceed to decide those questions which only concern the litigants and in which that person has no interest. But this cannot be done in the present suit, because the sole issue, the ownership of the deposit of $4,200, is one in which Aschaffenburg admittedly has an interest, and does not solely concern plaintiffs and Willard & Eiseman.

All of the parties by their pleadings and arguments wish to obtain a decree which will finally settle their rights to the deposit in the hands of Willard & Eiseman, and believing that Aschaffenburg was not properly impleaded, and that he is a necessary party in order to attain that end:

It is ordered that plaintiffs' suit be dismissed as of nonsuit at their costs in both courts.

O'NIELL, J., dissents for the reasons stated in the original opinions and for the further reasons now handed down. See 78 South. 767.

### Modification of Judgment.

PER CURIAM. The plaintiffs, Paul W. Maloney and others, and the firm of Willard

& Eiseman, one of the defendants, have by written motions, in effect, consented that our decree be amended. The former pray that we expressly mention therein the fact that the judgment of the lower court condemning them to pay to Willard & Eiseman the sum of $1,050 is reversed, and the latter, on the contrary prays that the affirmance of that judgment be expressly stated. Considering that the amendment prayed for cannot injuriously affect the rights of Aschaffenburg, the other defendant, and that it only seeks to remove an apparent ambiguity, therefore, with a view of making our said decree more explicit and clear, it is ordered that, without granting another rehearing, it be amended and restated as follows:

It is ordered that the judgment appealed from be set aside, avoided, and annulled, and that the suit of plaintiffs be dismissed as in case of nonsuit, at their costs in both courts.

O'NIELL, J., dissents.