## CARRERE'S SONS v. EDSTROM

(December 19, 1928. Opinion and Decree.)

J. C. Henriques, of New Orleans, attorney for plaintiff, appellee.

Milling, Godchaux, Saal and Milling, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J. Plaintiff, a real estate firm, sues for a commission in the sum of $1,500.00. There was judgment as prayed for and defendant has appealed.

The defendant owned a piece of property known as No. 209 South Rampart Street. She desired to obtain a tenant, who would assume many of the obligations usually borne by the lessor, as part of the consideration of the lease. After an extended conference between a representative of the plaintiff firm and defendant, the following instrument was confected:

"New Orleans, June 26th, 1925. "I hereby authorize E. A. Carrere Sons to lease for me the property, 209 S. Rampart St. for a term of twenty-five years, beginning October 1st, 1925, and expiring September 30th, 1950, on the following terms.

"The rent shall be payable monthly, in advance, and shall be at the rate of $125.00 per month. In addition it is understood and agreed that the lessee shall pay all the City and State taxes assessed against this property during the period of the lease and the lessee shall further carry, at his expense, fire insurance covering the full value of the property, and the lessee shall further carry, at his expense, tornado insurance at 50% of the amount of the fire insurance.

"The lessee shall have the privilege of subleasing the premises, in whole or in part, providing only that the lessor shall have the privilege of taking the property back on sub-lease at the same price and on the same terms as any bona fide offer which the lessee may have received from some one else.

"It is understood that the lessee shall take the premises in their present condition and I shall not be expected to spend any money for any cause whatever during the period of the lease, which shall include the roof.

"I agree to pay to E. A. Carrere Sons, the usual commission of 4% upon the total amount of the lease which shall be payable at the rate of $50.00 per month without interest until the full amount has been paid.

"The fire and tornado insurance shall be made payable to the lessor.

"I agree to sign the form of lease as adopted by the New Orleans Real Estate Agents Association.

"This agreement is good and binding for ten days from this date.
"6/26/25                     Mrs. A. Alson,
                              "C. R. Alson."

Plaintiff, armed with the authority conferred in the foregoing document, and learning that one John Albion Saxton was seeking a location for a hardware store, obtained Mr. Saxton's acceptance of the terms of the document through another real estate agent by the name of Oliver L. Clark, in the following language:

"June 26, 1925.
"Oliver L. Clark, Esq., Audubon Bldg.
"You are hereby authorized to accept as agent on my behalf, the above authorization of lease property 209 S. Rampart St., of Mrs. A. Alson, and C. R. Alson, for the period and terms indicated. Please prepare lease immediately. No commission is due from me on this transaction.

"It will probably be taken in my name personally.
            "John Albion Saxton (Signed)
                              "1021 Canal.
"6/26/25.   I accept the above lease.
            "Oliver L. Clark." (Signed.)

It will be observed that the parties contemplated a written lease, which was to be prepared at once in the form adopted by the New Orleans Real Estate Agents Association, but, for reasons which we will hereafter discuss, no lease was ever signed.

Defendant admits her signature to the document, but insists that the failure to ex-

ecute a written lease renders all the efforts to that end abortive, the contract being inchoate, and either party being privileged to recede before signing, citing: Larrousini vs. Werlein, 52 La. Ann. 424, 27 So. 89, 78 Am. St. Rep. 350; Wolff vs. Mitchell, Craig & Co., 24 La. 433; Sig. Haas & Sons vs. Bernhardt's et al., 144 La. 927, 81 So. 402. The failure to effect the lease is relied upon as absolving defendant from all obligation to her broker for the agreed commission. Lewis vs. Manson, 132 La. 816, 61 So. 835; Wittenberg vs. Davis, 3 La. App. 244.

In order to entitle a broker to a commission, he must, under the circumstances which obtain in a case like the present, produce a tenant who is able and willing to lease the property upon terms satisfactory to the owner. The failure to execute a formal lease, even when required by agreement between the parties, will not necessarily deprive the agent of his commission. Maloney et al. vs. Aschaffenburg, 143 La. 509, 78 So. 761; McWilliams vs. Stackhouse, 1 La. App. 253; Dauterive vs. West India Transportation Corp., 3 La. App. 319; Loyacano vs. Succession of Thompson, 4 Orl. App. 345; Wise-Miller vs. Catalanatto, 8 La. App. 186.

Plaintiff's recovery depends upon whether the failure to execute the lease contract was due to the fault of defendant, for, if the defendant made it impossible for the tenant—procured by the broker—to go forward with his undertaking under the agreement to lease, it is obvious that the broker cannot be charged with responsibility for the failure of the transaction which his services were engaged to consummate.

The record convinces us that Mrs. Alson became dissatisfied with the agreement almost immediately after she had signed it. She gives as her reason for her refusal to sign the lease, when it was presented to her with the signature of the tenant, that it was not "a Real Estate Board's lease," because "one-half the printed part was rubbed out and I felt that was unjust to me," and further, that the clause in the lease with reference to sub-letting the property was different from that in the agreement relating to that subject; that she thought she was "signing papers for them to work on because how could I expect these people to go to the trouble of making plans without something to work on." In speaking of her agreement, she said, "I agreed if they would furnish me with blueprints, specifications and security, I would let them have it for twenty-five years, and this was never done," and "I wanted the specifications, blue-print and security and I could not accept any other lease unless I got them for such a long time." Notwithstanding all this emphasis upon plans and specifications, there is absolutely nothing in the agreement which suggests this proposition as a condition of the lease, or otherwise. Finally, when all of Mrs. Alson's objections had apparently been met, some changes conceded to her tenant, and the lease in final shape, and it was believed, satisfactory to Mrs. Alson, she withheld her signature because someone suggested the necessity of her husband signing the contract. She thereafter steadfastly refused to sign any lease, without giving any reasons whatever.

It is apparent that Mrs. Alson simply changed her mind. For what reason we are not informed, nor is it important for the determination of the issues presented by this case. She had a perfect right to recede from the contract at any time prior to its formal execution, as provided in the agreement to lease the property, but the exercise of that privilege was burdened

with the responsibility for the compensation earned by plaintiff, in her service.

We believe the judgment of the trial court to be correct, and, for the reasons assigned, it is affirmed.