This is a suit by a prospective purchaser of real estate to recover back $550, the amount of a deposit which he made in connection with his written offer to purchase the said real estate.
Mrs. Rosa Moroni who owned the property which was situated in New Orleans "listed" it for sale with Albert F. Morris, a duly licensed and bonded real estate gent. A.G. Rickerfor was the surety on the qualifying bond which Morris filed when he obtained his license as a real estate agent.
On June 2, 1941, John A. Schroeder made a written offer to buy the property for $5500. This offer contained, among others, the following clauses:
"This sale is conditioned upon the ability of the purchaser to borrow upon this property as surety the sum of $3200.00 either by a Homestead loan from any Homestead on the usual Homestead terms, or by a mortgage loan from some other source at a rate of interest not to exceed ___ % per annum and for a period not to exceed ___ years, which loan the purchaser obligates himself to obtain if procurable. Either loan to be secured by purchaser or agent _____ days from acceptance hereof.
"* * * In the event that purchaser fails to comply with this agreement within the time specified, the vendor shall have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing purchaser in default, time being the essence of this contract; or the vendor may demand specific performance. In the event that the deposit is forfeited, the commission of the agent shall be paid out of this deposit, reserving to the vendor the right to proceed against purchaser for the recovery of the amount of the commission."
"Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated to pay the Agent's Commission and all fees and costs incurred in enforcing collection and damages."
On June 3, 1941, Mrs. Moroni accepted this offer in writing and Schroeder deposited with Morris $550 in accordance With his offer. The sale was never consummated and, on September 30, 1942, Schroeder filed this suit against Morris and his surety, Rickerfor, praying for the return of the deposit with legal interest from October 23, 1941, and for a separate judgment against Rickerfor for $55, 10% of the principal, as an attorney's fee.
Plaintiff alleged that under the terms of his offer he was not bound to proceed with the purchase unless he could obtain a "homestead or mortgage loan of $3200.00" and he further alleged "It was impossible for petitioner to obtain such a loan." He attached to his petition a copy of the said offer and acceptance and also certain letters *Page 439 
and copies of letters, and we notice that in one which touched upon his inability to obtain the necessary loan, his then attorney, Mr. M.M. Irwin, writing to Morris, the agent, stated that Schroeder could not obtain a loan "for the reason that the appraised value placed on said premises by the Central Appraisal Bureau amounted only to the sum of $4250.00." Let us interpolate here that the record shows that $4250 was a sufficiently high appraisement to permit any homestead association operating in this district to make the necessary loan of $3200.
Morris and Rickerfor answered admitting that the agreement had been entered into and had not been consummated and that the deposit had been made but they both denied that Schroeder had been unable to obtain a loan and averred that on the contrary he could have secured the loan "* * * during the life of said agreement from any homestead association in the City of New Orleans, and particularly the Union Savings and Homestead Association; that the Central Appraisal Bureau of the City of New Orleans appraised said property on March 1, 1941, in the amount of $4,000.00; that subsequently on request said appraisal was increased to $4,250.00; that said appraisal was good for a period of six months, and with said appraisal on hand, the maximum amount loan which would be made by said Union Savings and Loan Association would be $3,400.00; * * *." They averred too that Schroeder, "though often requested to apply for a loan at Union Homestead Association (Union Savings Loan Association), failed, refused and neglected to do so." In their answer they referred to the clause in the agreement providing that in the event of forfeiture of the deposit by the prospective purchaser the commission of the agent should be paid out of the deposit, the balance of the deposit should be paid over to the prospective vendor and the said prospective vendor should have the right to recover from the prospective purchaser the amount of the said commission. They averred too that Mrs. Moroni had often demanded that the balance of the deposit, after the deduction of the agent's commission, be turned over to her by Morris, and then the two named defendants, assuming the position of plaintiffs in reconvention, prayed that the deposit be declared forfeited.
[1] Mrs. Moroni was not made a party defendant by Schroeder although it is very obvious that no judgment ordering the return of the deposit to Schroeder should have been rendered without her having first been made a party. See Maloney et al. v. Aschaffenburg et al., 143 La. 509, 78 So. 761; Meade v. Viguerie, 11 La. App. 585, 123 So. 378; Texas Co. v. Mattison et al., 12 La. App. 186, 125 So. 147; Himel v. Fellman, 16 La. App 347, 132 So. 532, 133 So. 451, and Anderson et al. v. Blache et al., 17 La. App. 14, 134 So. 416.
Mrs. Moroni intervened and alleged that the contract had been breached by Schroeder by his refusal to apply for or make an effort to obtain the necessary loan, and that he could have obtained it from any homestead association in New Orleans, and particularly from the Union Savings and Homestead Association. She also averred that the Central Appraisal Bureau had appraised the property at $4250, and that this appraisal was sufficient to warrant the making of the said loan for $3200 by that association or by any other. She prayed that Schroeder's suit be dismissed and that she be given judgment against him declaring the deposit forfeited, that Morris be authorized to pay her the balance of the deposit which would remain in his hands after the deduction of $220 as his commission, and that she have judgment against Schroeder for $220 under the above quoted provisions of the contract.
It will be noted that the only issue raised by the pleadings was one of fact, i. e., whether or not the necessary loan could have been obtained, and all of the evidence which was adduced touched upon that one factual issue and no other.
There was judgment for plaintiff, Schroeder, for the amount of the deposit with interest. There was further judgment against Rickerfor for $55 as an attorney's fee in accordance with Act No. 225 of 1918, which provides that whenever a surety on any bond shall fail "to promptly pay its obligation" and a suit becomes necessary, an attorney's fee of 10% shall be assessed against the surety. The judgment also dismissed the intervention of Mrs. Moroni. From this judgment Morris and Rickerfor, defendants and plaintiffs in reconvention, and Mrs. Moroni, intervenor, have appealed. *Page 440 
Though the only issue presented by the pleadings was one of fact, whether or not the loan could have been obtained, when the matter was argued before us counsel for plaintiff devoted his entire argument to two legal contentions and frankly admitted that the record showed that plaintiff had made no effort whatever to obtain the necessary loan.
The two issues argued by counsel for plaintiff were, first, that the contract was unenforceable for the reason that it contained a potestative condition in that it was made to depend upon the possibility of obtaining a homestead loan; and, second, that it was unenforceable because of uncertainty in its terms in that it did not stipulate the maximum interest rate which plaintiff might be required to pay on the necessary loan nor the terms on which such loan should be made.
Counsel for defendants and intervenor concede that the question of whether the contract contains a potestative condition was argued below even though not raised in the pleadings, and he concedes too that since that issue was considered below it may be considered here, but he maintains that the question of whether or not the contract is uncertain in its essential provisions was not presented at all below and may not be raised here. He maintains also that in any event and even if the deposit should have been ordered returned, there should be no interest due on the said deposit for the reason that the contract, by its terms, declares that the said deposit is "non-interest bearing."
[2] So far as is involved the question of whether such a contract which contains a clause subject to a homestead loan, is unenforceable as containing a potestative condition, we adhere to the views expressed by us in Stephen L. Guice Co. v. Perkowski, 12 So.2d 692, and consequently hold that the clause concerning a homestead loan is not potestative but is merely a suspensive condition and that if it is shown that that supensive condition could have been complied with, as the Supreme Court held in Weingart v. Delgado, 204 La. 752,16 So.2d 254, and as it said in Morrison v. Mioton et al.,163 La. 1065, 113 So. 456, it was the buyer's "inescapable duty" to make the necessary application for the loan.
We have no doubt that the contention that the clause in question involves a potestative condition and the holding of the court below to that effect resulted from the fact that when the matter was submitted below we had not yet decided Stephen L. Guice Co. v. Perkowski, supra, and that consequently the views announced by us in Titus v. Jackson et al., 7 La. App. 37 and in those other decisions cited in Stephen L. Guice Co. v. Perkowski, supra, still represented the prevailing jurisprudence on that subject, for in all of those cases it had been held that the conditions set forth in similar clauses were potestative and therefore unenforceable.
Passing for the moment the question of whether there is in the contract such uncertainty as to justify a holding that it is unenforceable, we shall at this time set forth the facts concerning plaintiff's failure or refusal to attempt to obtain the loan. The record shows that the various homestead associations operating in New Orleans no longer maintain separate real estate committees of appraisers. There has been created what is known as the Central Appraisal Bureau and its appraisals are made use of by all homestead associations. The record shows also that that Dureau at that time had appraised this particular property at $4250, and that a homestead association will customarily loan as much as 80% of the amount of the appraisal, and the record shows too that the Union Savings Homestead Association had agreed to lend up to 80% of its appraisement, or as much as $3400. It does not show that it had accepted Schroeder as a borrower.
Plaintiff does not pretend that he made the slightest effort to obtain the necessary homestead loan whereas defendants and intervenor show, without any serious effort of plaintiff at contradiction, that he was told on several occasions that that homestead association had agreed to make the loan and that he had been told to make application to that association. His counsel now takes the position that the record does not show that the necessary loan might have been obtained by Schroeder, and all that is shown is that the property was appraised at a sufficiently high figure. He suggests that had plaintiff made the application for the loan it is possible that the homestead association might, for personal reasons, have refused to accept Schroeder as a borrower in spite of the sufficiently high appraisement. *Page 441 
[3] If plaintiff is serious in suggesting his own financial or personal irresponsibility, we think it sufficient to say that at no time did he raise the question that the homestead association might have personal objection to him. He limited his contention that he could not obtain the loan to the statement that it was impossible to obtain a sufficiently high appraisement. Since in his pleadings he based his entire case on his inability to obtain the loan, and based this inability only on the fact that the appraisal bureau would not make a sufficiently high appraisal, he should not be heard to suggest that although the necessary appraisal was obtainable, he, himself, might not have been acceptable to the homestead association. We repeat that it was his "inescapable duty" to make the application.
This case in no way resembles Decker v. Renaudin, 10 La. App. 725, 122 So. 600. There the contract in effect provided that the purchaser would buy the property if a certain designated homestead would make the loan or if the vendor's agent could arrange for a loan from some other source. The designated homestead would not make the loan and the vendor's agent made no effort to obtain it elsewhere. We held that under those circumstances the prospective purchaser was not bound. It is true that there may have been some obligation in the prospective vendor or in her agent to obtain a loan if Schroeder, himself, could not have done so but there was a greater obligation in him and the fact of the matter is, as we have shown, that intervenor and her agent produced a homestead and told him that that homestead would make the loan if he made application to it.
[4, 5] Counsel for plaintiff argues that the contract cannot be enforced because of its uncertainty. In the first place as we have said, this question of uncertainty was not raised by the pleadings and, according to counsel for defendants and intervenor was not presented below. In the second place, even if different homesteads have terms which in certain particulars differ from other homesteads, all are regulated by state statute and can require no terms or interest rates not permitted by law. In effect, plaintiff said to Mrs. Moroni, I will buy your property if any homestead will loan me $3200 on homestead terms. While we do not think that that offer obligated Schroeder to apply to every homestead operating in this territory, we do think that it obligated him to make a reasonable effort to obtain the loan, and we think also that he could not refuse to make any effort at all and refuse to present his application to the homestead which he was told would make the loan.
In his contention that the contract is unenforceable because of uncertainty, counsel for plaintiff particularly relies upon two decisions of our Supreme Court. They are Weingart v. Delgado, supra, and Kaplan v. Whitworth, 116 La. 337, 40 So. 723, 726. In the Kaplan case the court held the contract to be unenforceable because of uncertainty as to the purchase price because the interest to be paid on the deferred portion of the purchase price was not fixed in the contract. The court held that the parties had not fixed the price since when a sale is made partly for cash and partly on time, the interest to be paid on the deferred portion of the price is a part of the price. We do not see that that reasoning is pertinent here for here the sale as between the parties was to be for cash and the vendor was in no way concerned with the rate of interest which the purchaser might have to pay. Of course there is written into such a contract by law a condition that the loan must be obtainable at a rate not higher than the maximum fixed by law but once it is shown that a loan may be obtained at a rate within legal limits the vendor has no concern with what that rate may be. On the other hand, if the purchaser is unwilling to make a loan unless at some lower rate of interest he should so stipulate in his offer. Then if his offer is accepted the interest rate will be part of the contract between the parties to the sale. In the Kaplan case reference is made to the fact that our Code fixes rates of interest, the legal rate where no rate is stipulated and a maximum rate in any event. But the court said that our codal articles "have no application to such a case" as a sale on deferred payments where the vendor receives the notes and is to be paid the interest. We think there is in this case at least an intimation that those articles might have application to a case such as this where the vendor is to receive cash and the purchaser is to obtain his loan from some other source.
The other case relied upon by counsel for plaintiff, Weingart v. Delgado, supra, is not to be so readily distinguished and *Page 442 
yet we think that it would not necessarily be controlling here even if the question of the uncertainty of the terms of the contract has been properly raised here.
In that case there was a contract very similar indeed to the one which we are considering. It contained a stipulation for the sale of real estate at a fixed price and it contained also a clause which stated that the sale was conditioned upon the plaintiff's ability " 'to borrow upon this property as surety the sum of $10,000.00 either by a Homestead loan from any Homestead on the usual Homestead terms, or by a mortgage loan from some other source at a rate of interest not to exceed Six % per annum and for a period not less than 15 years, * * *.' " [204 La. 752, 16 So.2d 255.] The plaintiff was the prospective purchaser and he sought to compel the defendant property owner to comply with the terms of the contract and deliver the property. The owner refused to do so and in answer to the suit for specific performance, among other defenses, alleged that the contract to purchase " 'is potestative as to its terms in that there is no comma after the word "source" in said agreement and that, grammatically construed, the rate of interest is not fixed and the purchase price is, therefore, indeterminate, and the defendant desires to avail herself thereof and pleads the potestative condition in her favor in said contract or agreement.' "
When the Supreme Court considered that question it did not say what it would have thought of the contract had there been nothing therein to show the rate of interest which the plaintiff would have been obligated to pay on a homestead loan but merely said that the said rate, 6%, set forth, applied to a homestead loan as well as to a loan from some other source. While there is an intimation that otherwise the court might have held the contract to be uncertain in its terms, the result does not necessarily indicate that the court so held, and we indulge the view already expressed that when the loan is to be obtained from some other person, the fact that the interest rate is not set forth in the contract between the parties to the sale does not render the contract unenforceable because of uncertainty. At any rate, as we have already stated, this question was not properly before the district court. In the syllabus in Ferdinand Kuhnholz v. City of New Orleans, 45 La. Ann. 1398, 14 So. 219, appears the following:
"Where the judge of the lower court fails to pass upon the issue actually before him, and passes upon one not raised by the pleadings and evidence, the judgment will be annulled, and the case will be remanded."
In the Weingart case the Supreme Court, concerning an issue not raised below, said:
"In the first place, this issue was not raised by the pleadings, appearing for the first time during the written and oral argument. * * *"
[6] We notice an intimation that if we should conclude as we have that plaintiff cannot be heard to raise the question of uncertainty of the terms of the contract of sale, still we should not permit Morris to recover his commission nor Mrs. Moroni to recover the forfeited deposit because they are entitled to those monies only where they show that the contract under which they claim was legal and enforceable; that they, Morris and Mrs. Moroni are in the position of plaintiffs and that therefore the burden is on them to prove the legality and enforceability of the contract. Thus it is said that even if Schroeder cannot point to uncertainty in the contract as a basis for recovery by him of his deposit, nevertheless the question of uncertainty is raised by their claims. We do not think so. Schroeder brought the original suit and he raised only one issue — his inability to secure the loan. He alleged that he had made a contract and that for the reason that he could not obtain a loan, it was not binding. Therefore there was no obligation in Morris or in Mrs. Moroni to do more than prove that the loan could have been obtained. When they did that they defeated the claim of Schroeder for the return of the deposit and then, because of the other provisions of the contract which Schroeder had attached to his petition, they showed that they were entitled to the recoveries which they seek. It is true that Mrs. Moroni was not made a party defendant and that she intervened and, therefore, is in fact a plaintiff, but, as we have already shown, she should have been made a party defendant and under no circumstances could Schroeder have obtained the relief which he sought without making her a party.
[7] Another contention of plaintiff is that if intervenor intended to force the *Page 443 
plaintiff to carry out the terms of the contract there should have been a formal tender of the title. How, we ask, could there have been a tender without the securing of the loan? It was known that Schroeder did not have the cash and that the loan was essential, and how could there have been a loan without an application? Again we comment upon a great similarity to the situation in Morrison v. Moiton et al., supra, in which the Supreme Court said that when such a contract is made there is an "inescapable duty" in the prospective purchaser to make the necessary application for the loan.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and it is now ordered that the deposit be forfeited, that Albert F. Morris be, and he is, authorized to deduct from said deposit his commission of $220 and to pay over to Mrs. Rosa Moroni the balance remaining in his hands; and it is ordered further that there be judgment in favor of Mrs. Rosa Moroni and against John A. Schroeder for $220, all at the cost of plaintiff.
Judgment reversed.
WESTERFIELD, J., dissents.