*No. 8919.

### J. B. CAMORS & CO., vs. THOMAS A. MADDEN.

36 425
50 1297
36 425
h115 837

In a contract of sale for the delivery of a commodity at a certain time, the vendor who notifies his vendee at about the time of delivery of his inability to fulfill his contract, relieves the latter of the legal obligation to put the vendor in default.

The defaulting vendor is therefore liable for damages, the measure of which is the difference between the price stipulated in the contract of sale and the enhanced market price of the commodity at the time he made default.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*P. E. Théard & Sons* for Plaintiffs and Appellees.

*Jonas & Nixon* for Defendant and Appellant.

The opinion of the Court was delivered by

POCHÉ, J. Plaintiffs' object in this suit is to recover damages for the inexecution of a contract of sale. They charge that on the 12th of July,

1881, the defendant sold to them ten car loads of Nicaragua hard wheat, on sample, at 95½ cents a bushel, for prompt shipment, and that he made default, thereby causing them damages in the sum of $1200.

The defendant pleaded the general issue, and he has taken this appeal from a judgment of six hundred and twenty dollars against him. His main contention on appeal is that the contract which he made with plaintiffs was not an absolute, but merely a conditional sale, without stipulation as to the time of delivery, and that the damages allowed by the district court are excessive.

The evidence amply supports plaintiffs' theory, which is as follows: That the contract was an absolute sale, binding on both parties, and that the wheat, which was known to be in Texas, was to have been shipped from that point, at most, three days after the date of sale, to this port, where it should have been delivered on or about the 25th of the month, in ample time for delivery on board of a ship sailing for France on the 30th of that month, on which they had retained freight room for the wheat which they had purchased from the defendant. As early as the 15th of July, the defendant informed them that he was unable to fill his contract, but he was urged to continue his efforts. However, on the 27th of July, he finally notified them of his absolute inability to deliver the wheat.

That formal notification to plaintiffs relieved them of the obligation to put the defendant in default.

Under this state of things plaintiffs are clearly entitled to damages, and the measure of the same is the difference between the price stipulated in the contract of sale and the ruling market price at the time that default was made.

On that point the evidence is somewhat conflicting, a circumstance which is due to the absence of regular reports of that kind of wheat on this market. The testimony, in fixing the acknowledged advance of the commodity, varies from five to thirty cents per bushel. The district judge concluded that the advance was 15½ cents, and he must have based his conclusion on a wheat transaction reported by one of the witnesses, a dealer in grain, who stated that at the end of July he closed a transaction at the rate of $1 11 a bushel for a first quality of Nicaragua hard wheat. Under that testimony, which certainly affords a very reliable test of the market price of that commodity at the very time that defendant made default, the judge correctly held the defendant liable for damages at the rate of 15½ cents per bushel for 4000 bushels, which is shown to be the average capacity of ten car loads. C. C. 1934; Vance vs. Tourné, 13 La. 225; Gauthier vs. Green, 14 A. 788.

His conclusions are supported by the evidence and are sanctioned by law and equity. They are also ours.

Judgment affirmed.