BREAUX, C. J.
Plaintiff asks to be recognized as the owner of a lot of ground and the improvements thereon described in her petition.
She at the same time obtained a writ of injunction prohibiting the defendants from selling the property.
She claims to have bought the property from Frederick Glaesser, or to have acquired •the right as owner .thereto by virtue of a •written instrument she holds.
The price as per this instrument was $5,500, of this amount $550 payable in cash, .and the balance, to wit, $4,950, to be paid •immediately after examination of the title by notary.
The two defendants were husband and wife, and the property belonged to the community.
Mrs. Glaesser, wife of the vendor, brought suit a few days after the alleged promise of sale for a separation from bed and board.
In accordance with the prayer of her petition, the court issued an injunction prohibiting the husband, Frederick Glaesser, from selling this and all other property of the community.
The defendant wife obtained a judgment against the husband of separation from bed and board. The judgment of separation was •rendered in October, 1907.
The two defendants, through their respective counsel, filed separate exceptions, presenting substantially the same pleas. These exceptions were overruled in the district court.
Plaintiff has attacked the judgment of separation from bed and board on the ground that it was brought to defraud her, and to prevent her from recovering the property she had bought from Frederick Glaesser.
The defense of Frederick Glaesser is that he has not sold the property nor promised to sell; that, the paper on which plaintiff claims to have secured the right of an owner to the property was only a printed blank with only printed words thereon. It could not be of any binding effect, and that he authorized no one to write anything on this paper; that, while it is true that he signed the blank sheet, he did not obligate himself to anything thereby.
Some two or three days after he had signed his wife sued him, and obtained an injunction restraining him from selling this property as it was part of the community.
He avers specially that the plaintiff knew all about the suit for separation from bed and board, and that she is bound by the proceedings as the suit was duly filed as required by law; that in the judgment of separation from bed and board the court ordered the immovable property composing the assets of the community to be sold. It was advertised for sale in accordance with the court’s decree.
The defendant’s further contention is that, if the instrument in question upon which plaintiff relies to sustain her action can be considered as an enforceable contract against him, then that it is only a promise to sell from which he has the right to withdraw at any time upon returning the double of the amount of the asserted earnest money, which he is willing to do if the court finds that the paper is an enforceable contract.
The other defendant, the divorced wife of Glaesser, in her answer avers, in substance, that she filed suit for a separation from bed *381 and board, obtained a judgment, and has secured a right which protects her from all of the pretended claims of the plaintiff.
The proposal of plaintiff, signed by her, to buy the property, is dated September 12, 1907. She proposed to buy the property No. 729 Oonti street for cash, 10 per cent, on the spot upon the acceptance of her offer, and the remainder, $4,950, all to be paid if the title to the property was good and valid, free from incumbrance, acceptable to Cahill, the attorney.
That part, “acceptable to Cahill, the attorney,” was inserted after the document had been signed by plaintiff and out of her presence and that of the vendor.
The proposal was accepted in writing by Frederick Glaesser, the vendor. The amount of 10 per cent, was paid to his agent.
The real estate agent, Mr. Bassich, through whom the negotiations were conducted, stated as a witness that the instrument in writing containing the promise in question had been prepared by him, and that it was complete in every respect but that it had not been signed by plaintiff when the name of Cahill was written thereon; that it was signed afterward by Frederick Glaesser, the defendant and vendor, in his presence; that this was on the day preceding the day that suit was brought by Mrs. Glaesser against her husband for separation from bed and board.
This witness is positive that the instrument was signed on the 12th day of September, 1907; that there was no antedating done; and that it contained all the writing as above stated, except the few words preceding the name of Cahill, attorney.
The witness Bassich is positive that the blanks were filled at the time that Glaesser signed the agreement to sell, and that there was no change made afterward, except that the words, “and to A. Cahill, attorney,” were added.
It is not clearly shown by whom they were added. They were added after Glaesser had signed.
The real estate agent Bassich acted as a broker, and in that capacity represented the vendor and vendee. Representing all the parties in an honest transaction, so far as the record discloses, his testimony should receive due weight. He is, in addition, a reputable attorney at law.
Glaesser, testifying as a witness for plaintiff, began by denying everything in regard to the agreement, save and except that he had signed the paper in blank. He testified that there was nothing written on it. It was, none the less, handed to Bassich as an authorization to sell the property.
The Agreement:
There was on the face of the paper in this agreement an absolute proposal on the part of Mrs. Provenzano to buy the property and it was unconditionally accepted by Glaesser, one of the defendants. The document signed contains all the elements of a complete agreement. It is binding provided nothing was done having the effect of annulling or setting aside its otherwise binding effect. The amount as stipulated was paid.
Earnest Money:
It is contended on the part of the defendants that the money paid was earnest money, and that, if the court decides that they have the right, in so considering earnest money, they will then pay.
There is no necessity of discussing the question of earnest money at any length, for it is made very evident by the wording of the contract that it was not intended as earnest money, but solely and exclusively in part payment of the price. Those are the words of the contract. There is nothing going to prove that it was ever the intention of either party to the agreement to stipulate the right to pay earnest money, or, on the other hand, on the part of the buyer to pay twice the amount to recall and vacate the contract. It was not understood by either party that *383 the contract could in that manner be vacated. The expressions were entirely to the contrary. The amount was to go to the payment of the price.
The character of the arrhes (earnest money, substantially) is sometimes determined in favor of the arrhes when there is no agreement following the deposit in matter of a sale in case there appears in some way that it was the intention that it should be earnest money. But otherwise the parties are free to give to their contract a different effect.
See Lacantenerie, De La Vente, p. 54.
That is precisely that which has been done in this case. The parties did give it a different effect by the wording of the agreement.
The Authority of the Husband to Bind Himself:
This is another proposition of the case. During the marriage the husband is the head of the community, and can sell community property without the consent of his wife. He did sell the property during the existence of the community, and before the suit for separation from bed and board and of property was brought. The agreement here to sell was a complete agreement and binding upon the parties, binding upon the community. It was not in the power of the wife by an injunction proceeding ancillary to a main action to prematurely stop the sale, and have it decreed null because the property was community, the sale of which she enjoined after the agreement before mentioned had been entered into.
Notice to the purchaser:
There was something said in the testimony about the purchaser’s knowledge of the intention of the vendor’s wife to bring suit for separation of property and to take out an injunction to prevent the sale of the community property. Knowledge of the purchaser was not proven. The weight of the testimony does not sustain that contention.
If there had been knowledge on the part of plaintiff our conclusion would be different.
The Asserted New Condition Added to the Agreement:
This is another of the contentions of the defendants. They urge that after the vendor Glaesser signed the document a condition never agreed to was added to the contract; that it was a new condition which does not bind Glaesser, for reasons just stated, nor the other defendant.
The asserted new condition was that the title would be passed upon by the Attorney General. The fact is that there was no new condition. It was not really a condition save that condition which is implied in every contract of sale, that the vendor shall make good title. It only shows that the vendee desired a good title.
There is this difference between Elmer v. Hart, 121 La. 537, 46 South. 619, No. 16,681, referred to by defendants, and the present ease. In the former a new condition was subject to a good title guaranteed by the title and mortgage company. A special guaranty was required. Here there is no such condition. Indeed, there is no condition at all. Vendee certainly had a right to a good title. The first paragraph of the contract contains all that was essential. The paragraph to which the name of “A. Cahill, attorney,” was added, relates exclusively to the title in such a manner as clearly indicated that she expected the title to be satisfactory to the attorney.
We annex a copy of the agreement of sale to our decision for reference.
Eor reasons stated, the judgment of the district court is affirmed.
MONROE and PROVOSTY, JJ„ dissent.
NOTE.
“New Orleans, September 12, 1907.
“National Realty Co., Ltd.:
“I hereby offer to purchase the property 729 Conti street, three-story brick building, square bounded by Royal, St. Louis, and Bourbon, measuring 23 feet on Conti by 65 feet in depth, *385 more or less, belonging to Frederick Glaeser, for the price and sum of fifty-five hundred dollars. Terms cash, taxes for 1907 to be paid by vendor.
“Upon the acceptance of this offer I will at once pay you ten per cent, of above offer on account of purchase price.
“Act of sale at my expense before A. J. Cahill, notary public, which I bind myself to sign, and to pay to vendor the purchase price, if a good and valid title, free from incumbrances, can be made to me, and acceptable to A. J. Cahill, attorney.
“Mrs. Widow George Provenzano.”
“I hereby accept the above offer and agree to pay to the National Realty Company, Ltd., a commission of two per cent, on the amount of purchase price.
“Frederick Glaeser.”