MOISE, Justice.
 

 Writs were granted in this case to review a judgment of the appellate court, which denied plaintiffs’ claim for double the amount of a deposit made by them to bind an agreement to purchase and permitted the defendant vendors to retain the amount of said deposit, $200,'thereby reversing a judgment of the district court in favor of plaintiffs.
 

 
 *432
 
 The facts of the case, briefly, are:
 

 Applicants signed on April 26, 1948 an agreement to purchase certain property from respondent vendors for the price of $2,000; the contract, which was on a printed form used by vendors in their real estate transactions, contained no time limit for performance, and it stated “Paving due —none”. In due course purchasers’ attorney examined the title, and the customary certificates were ordered; the paving certificate indicated paving due amounting to $354.27, together with 10% per annum delinquent interest as a penalty. There was a lengthy exchange of correspondence with respect to the cancellation of this lien, in which vendors contended that same had ceased to have any legal effect, the property having been adjudicated to the State of Louisiana for taxes under Act No. 237 of 1924, as amended (LSA-R.S. 47:2189) and subsequently patented to them, with the result that all outstanding liens thereon had been automatically cancelled. They later modified their theretofore adamant position, by proposing that an escrow agreement be entered into, whereby they, vendors, would deposit with a third party the sum of $200, to be held pending the outcome of negotiations which vendors were undertaking with the City of New Orleans concerning discharge of the lien. Plaintiffs reiterated their refusal to accept delivery unless the property be free and unencumbered from paving liens, and then made demand “for the return of the deposit of $200.00 or that the outstanding paving claims against the property be cancelled within ten days from the date of this letter” (July 13, 1948),, which was already two and a half months from the time that the agreement to purchase had been entered into. No further-action was taken until two more months had passed, when, on September 14, 1948,, vendors agreed to pay the paving in full on or before passage of the act of sale. By this time, however, purchasers were no> longer willling to accept delivery; but vendors insisted that the contract be fulfilled. Plaintiff purchasers thereupon sued to recover double the amount of their deposit, and the vendors reconvened, asking, for specific performance and “for general and equitable relief,” with the results stated supra.
 

 As we view the record, it presents two. serious issues:
 

 1. Where the validity and exigibility of an existing lien against real property is. under dispute, though the existence as a. matter of public record is undeniable, can a purchaser be compelled to accept delivery— despite the fact that vendors’ title itself is not otherwise suggestive of future litigation? We think not.
 

 2. Had the vendors actively violated the agreement to purchase so as to render a. formal putting in default unnecessary? It is our opinion that they did.
 

 Our jurisprudence is well-settled! that the existence of mortgages or Hens (not suggestive of litigation), does not ab
 
 *434
 
 •solve a purchaser from the obligation of •completing his contract, but that the purchaser does have the right to demand cancellation thereof or security to be given in lieu of such cancellation. Furthermore, such incumbrances may be cleared at the moment of passing the act of sale. Lomel Realty Corp. v. Chopin, 177 La. 474, 148 So. 683; Jaenke v. Taylor, 160 La. 109, 106 So. 711; Grimshaw v. Hart, 6 Rob. 265; Kinberger v. Drouet, 149 La. 986, 90 So. 367; Murphy v. Hussey, 117 La. 390, 41 So. 692; Richardson v. Charles Kirsch & Co., La.App., 189 So. 146; Beatrous v. Dies, 167 La. 665, 666, 120 So. 44; Palmer v. Gelpi, La.App. 18 So.2d 59. However, these decisions do not apply to the case at bar, for the reason that defendant vendors did not admit at any time that there was any debt due to the City; in point of fact, they contended from the beginning that the adjudication to the State for taxes and subsequent patenting of the property by the State had cancelled
 
 all
 
 liens, and they had every intention of litigating the question to a final decision, until at last they offered to pay the paving in order not to lose the sale (which they had already lost, in point of fact.) Such a situation bears no analogy to a case where the vendor admits that the debt or encumbrance operates against his property and does not refuse to have the same paid out of the proceeds of the sale price.
 

 Article 1911 of the Revised Civil Code reads:
 

 “The debtor may be put in default in three different ways: by the term (terms) of the contract, by the act of the creditor, or by the operation of law:
 

 “1. By the terms of the contract, when it specially provides that the party, failing to comply, shall be deemed to be in default by the mere act of his failure.
 

 “2. By the act of the party, when at or after the time stipulated for the performance, he demands that it shall be carried into effect, which demand may be made, either by the commencement of a suit,
 
 by a demand m writing,
 
 by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.
 

 “3. By the operation of law. This takes place in cases where the breach of the contract alone is by law declared to be equivalent to a default. The law having declared that the neglect to return a thing loaned for use, at a stipulated time, or the application of it to another use than the one for which it was lent, puts it at the risk of the borrower; this, without any act of the lender, puts the borrower in default, and forms an example of this part of the rule.” (Italics mine.)
 

 Article 1913 of the Revised Civil Code reads:
 

 
 *436
 
 “•In commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must, at the time and place expressed in, or implied by the agreement, offer or perform, as the contract requires, that which on his part was to be performed, otherwise the opposite party will not be legally put in default.”
 

 Under the agreement to purchase, vendors were obligated to deliver a title on which there was no paving due. It was not a breach of their warranty to state in the agreement that none was due, although in actuality there was, provided they accepted responsibility for discharging such indebtedness as might have existed and for clearing all encumbrances evidencing the same, either prior to or concurrently with the passage of the act of sale. Vendors’ obligation was to deliver a clear title, and although no term was specified in the agreement of purchase, certainly within a reasonablé time. When purchasers twice made demand upon them to deliver a free and unencumbered title, to no avail, the vendors cannot subsequently be heard to say that they were not at fault.
 

 Neither can they plead that they have not been put in default. There is no particular
 
 form
 
 required by Article 1913, R.C.C., for making the demand; it is sufficient that the notification contains demand of performance on the part of the debtor, and announce a readiness on that of the creditor, to do what the agreement requires of him. What that is, of course, depends on the circumstances of each case; the offer must be construed in relation to them. Wilbor v. M’Gillicuddy, 3 La. 382, 385. Moreover, it is not necessary to put one formally in default who refuses to perform or who acknowledges an inability to perform. Regardless of vendors’ reasons for arguing that from a legal standpoint, the title was clear, as a matter of public record it was not. Their obduracy in this regard would have rendered any further putting in default a vain and useless gesture, which the law does not require. Voss v. Roach, La.App., 35 So.2d 142; Louisiana Farms Co. v. Yazoo & M. V. R. R. Co., 179 La. 539, 154 So. 445.
 

 For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans is reversed and set aside, and the judgment of the Civil District Court for the Parish of Orleans is reinstated and made the judgment of this Court, respondents to pay all costs of these proceedings.