119 So.2d 469

Hilda BELL, wife of/and Joseph E. POCHE

v.

John E. RUIZ.

No. 44040.

March 21, 1960.

Rehearing Denied April 25, 1960.

Reed, Reed, Reed & Garvey, New Orleans, for appellants.

Ponder & Ponder, New Orleans, for defendant-appellee.

SIMON, Justice.

Plaintiffs, Mr. and Mrs. Joseph A. Poche, instituted this suit against John E. Ruiz, a real estate agent, for a return of double the deposit, attorney's fees and costs stemming from an alleged non-performance by the defendant, John E. Ruiz, of an agreement to sell and convey certain real estate owned by him.

On October 19, 1956, plaintiffs and defendant executed a written agreement, the tenor of which is that the Poches offered to buy and Ruiz agreed to sell a certain lot and the improvements thereon located in Jefferson Parish, Louisiana. The sale price agreed upon was $8,000, $3,000 of which was to be paid in cash, and conditioned upon the ability of the prospective purchaser to negotiate a loan of $4,400 within sixty days from date of said contract, at a rate of interest not to exceed six percent per

annum and payable over a period not to exceed fifteen years, and upon purchaser's ability to obtain a "side loan" of $600 payable at $12 per month with six percent per annum interest. It appears that Ruiz would obtain the loans in his own name with an assumption thereof by the plaintiffs.

The contract called for a deposit of ten percent of the purchase price, or the sum of $800, simultaneously with the execution of the contract, this covenant being fully complied with. It further provided that upon the completion of certain repairs to the premises by the defendant, the act of sale would be executed on or before December 19, 1956, in the presence of a notary public designated by the defendant.

The contract further provided that in the event the purchaser failed to comply with the agreement on or before the date above specified, the vendor would have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing the purchaser in default, or demand specific performance. In the event that the vendor did not comply with the agreement to sell within said date, the purchaser would have the corollary right either to demand the return of double the deposit, or specific performance of the agreement.

On the reverse of the contract there appears the following notation:

"In connection with the contract on the reverse hereof the act of sale date which is 'on or prior to December 16, 1956' is hereby extended by mutual consent of the purchasers and vendor for sixty additional days if curative work in connection with the title is required."

The consent of the parties to the extension of time for the purpose stated is attested by their respective signatures thereto.

On October 29, 1956, plaintiffs paid defendant an additional $2,200 in cash, for which they received a receipt signed by an agent of Ruiz and stating that this amount represented "additional deposit." The following day, with the permission of the defendant, plaintiffs began occupancy of the premises although the terms of the agreement called for occupancy by plaintiffs following execution of the deed.

On February 22, 1957, plaintiffs' attorney addressed a certified letter to the defendant returning the keys to the premises, and therein notifying him that though the contract called for the act of sale to be executed on or before December 19, 1956, that the time allowed for curing title defects had long since expired without success; that having deposited the sum of $3,000 under the terms of the contract, accordingly, defendant's inability to deliver a clear and merchantable title entitled plaintiffs to, and they were now formally demanding, without the necessity of placing defendant in formal

579

default, a return of double the amount so deposited.

Receiving no answer to the foregoing demand, plaintiffs, on March 11, 1957, filed suit seeking to recover the sum of $6,000 plus an additional amount of $1,000 as attorney's fees, together with legal interest thereon from date of judicial demand until paid and for all costs of the proceedings.

Defendant, in his answer, admitted the contract but denied the other allegations of plaintiffs' petition. Then assuming the position of plaintiff in reconvention, he alleged that it was not he but plaintiffs who had not complied with the terms of the agreement inasmuch as they had not obtained the financing called for by the agreement within the time limit therein fixed. He averred that he was ready, willing and able at all times to convey title to the property in dispute, giving full warranty with full substitution and subrogation; that plaintiffs refused to accept title until they could obtain financing through the Fifth District Homestead Society; and that he granted them the sixty-day extension to procure the loan which was not forthcoming at the end of that period. Countering plaintiffs' contention that they had paid $3,000 as a deposit, defendant claimed that the sum of $2,200 was not an additional deposit but was paid to protect him for any rental which might become due and for any damages to the premises resulting from their occupancy. Defendant prayed for a fair rental value of $480 flowing from plaintiffs' four-month occupancy of the premises, $1,615 for damages to the premises, forfeiture of the $800 deposit, reasonable attorney's fees and costs.

The district court, without assigning written reasons, rendered judgment in favor of plaintiffs for the sum of $3,000, together with legal interest thereon from date of judicial demand until paid and for all costs, and dismissed defendant's reconventional demand.

On appeal plaintiffs reurge their contention that they should be awarded the return of the $3,000 paid to defendant, an additional $3,000 for damages, and $1,000 attorney's fees with interest and costs. Defendant, in his answer to the appeal, reiterates his claims contained in his reconventional demand.

Should we find that defendant has not complied with the terms of the agreement as contended by plaintiffs, there is no doubt that they are entitled to a return of double their deposit as damages, for this court has so held in Ducuy v. Falgoust, 228 La. 533, 83 So.2d 118, 123. The agreement in that case contained the identical stipulation that "In the event * * * the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either to demand the return of double the deposit, or specific performance." Inasmuch as the vendor in the Falgoust case was unable to deliver a valid and merchantable title, we concluded that the prospective

purchaser was entitled to the return of his deposit plus an equal amount as stipulated damages, for the reason that the parties having "thus contracted in clear and explicit language that leads to no absurd consequences and as there is no suggestion that it is contrary to good morals or public policy, it is the law between them and the court is bound to give legal effect thereto." The principles announced in the above cited case were reiterated in Caplan v. Airport Properties, 231 La. 1071, 93 So.2d 661.

It was brought out in the testimony in the lower court that defendant's attorney, Mr. David Hogan, informed plaintiffs that the act of sale had not been previously executed for the reason that there were legal difficulties involving the validity of the title requiring curative work. As Mr. Hogan was defendant's trial attorney and the record shows that he made no attempt to contradict plaintiffs' testimony, we must presume that they were so advised.

The record reveals that the defect in the title which had to be cleared prior to the passage of the act of sale was the case of Ruiz v. Matis, bearing No. 24,551 of the Civil Docket of the 24th Judicial District for the Parish of Jefferson. After judgment was rendered against him in the district court, Matis appealed to this court on July 15, 1952, bearing Docket No. 40,994, and the case was still pending at the time of the execution of the agreement between Ruiz and the Poches and at the time of the

filing of the instant suit. On this appeal, Matis, a mortgage debtor of Ruiz, was attempting to annul and declare void an alleged fraudulent mortgage bearing upon the subject property and to obtain a revendication thereof. The appeal was finally dismissed by us in June, 1959.

Defendant's counsel in oral argument contends that since the record in the foregoing styled litigation was not introduced in evidence in the lower court and forms no part of the record, it should be held irrelevant. Being on appeal to this court, we are not only justified but bound to take judicial cognizance of the issues therein presented. Investors Homestead Ass'n v. Anglada, 193 La. 596, 192 So. 69; Lattier v. Abney, 43 La.Ann. 1016, 10 So. 360; Mower v. Kemp, 42 La.Ann. 1007, 8 So. 830; Raymond v. Villere, 42 La.Ann. 488, 7 So. 900; Paland v. Chicago, St. L. & N. O. R. Co., 42 La.Ann. 290, 7 So. 899; and Hubbs v. Kaufman, 40 La.Ann. 320, 4 So. 58.

Although defendant claims that he was ready, willing and able to convey title to the property at all times, it is evident from the notation extending the sale date for sixty days that defendant knew that some steps would have to be taken before the title which he offered would be a valid and merchantable one. The sale date was extended for sixty days "if curative work in connection with the title is required." Since it appears from the records of this court that the defect in the title was

not cured until the dismissal of the appeal in Ruiz v. Matis, supra, in June, 1959, long after the time for specific performance of the agreement to sell had expired, Ruiz could not have complied with the terms of the agreement, the title being manifestly a litigious one.

Defendant contends that plaintiffs are not entitled to the return of double the deposit due to their failure to have made a demand in writing during the term of the contract for a delivery of title, and that the placing in formal default is a prerequisite to the recovery of damages or to the rescission of the contract as provided in LSA–C.C. Article 1912.[1] The law, however, does not require a putting in default when such action would be a vain, futile and useless gesture. Fox v. Doll, 221 La. 427, 59 So.2d 443; New Iberia Sugar Co. v. Lagarde, 130 La. 387, 58 So. 16; Southern Sawmill Co. v. Ducote, 120 La. 1052, 46 So. 20; Camors v. Madden, 36 La.Ann. 425; and Robinson v. Clark, 20 La.Ann. 384. Obviously a demand by plaintiffs that defendant convey a title which they knew to be litigious would be a vain, futile and useless gesture. Under the circumstances, plaintiffs are entitled to a return of double the deposit despite the absence of a formal putting in default.

Plaintiffs contend that they are entitled to a return of double the $3,000 paid to defendant because the receipt for the additional $2,200 defined it to be an additional deposit. Countering, defendant shows that the deposit called for by the contract was $800 and that the other $2,200 can, at best, be no more than a payment of part of the purchase price. We are in full accord with defendant's contention. It is well settled that a contract to purchase or sell real property, to be enforceable, must be in writing and that parol evidence cannot be received over objection to vary the terms thereof. Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879; Oeschner v. Keller, 134 La. 1098, 64 So. 921; and Provenzano v. Glaesser, 122 La. 378, 47 So. 688. Furthermore, the contracting parties stipulated the customary ten percent deposit, or $800, on the sale price of $8,000. The agreement likewise called for payment of $3,000 cash on the date of the execution of the deed. Undoubtedly the deposit of $2,200 by plaintiffs was to be applied to a full discharge of the cash portion of the price, and cannot be treated as forfeitable deposit under the plain language of the contract. Thus plaintiffs are entitled to a return of double the $800, or a total of $1,600.

1. Art. 1912: "The effects of being put in default are not only that, in contracts to give, the thing, which is the object of the stipulation, is at the risk of the person in default; but in the cases herein- after provided for it is a prerequisite to the recovery of damages and of profits and fruits, or to the rescission of the contract."

■■ Plaintiffs are further entitled to a return of their payment of $2,200 less the fair rental value of the premises during their four-month's occupancy thereof. Despite defendant's claim that the sum of $2,200 was paid by plaintiffs to cover rental of the premises and any damages which might be sustained in the event the sale was not consummated, defendant was unable to prove the existence of such an agreement. However, since plaintiffs did occupy the premises for four months, defendant is entitled to the fair rental value thereof on a quasi contractual basis. LSA–Civil Code, Article 2293.[2] Defendant's demand for the sum of $120 per month is unrealistic in view of his testimony that the house had been yielding between $70 and $75 per month. We, therefore, consider $70 per month for four months to be a fair rental value, or a total of $280.

In addition to the rental value of the premises, defendant also prayed for damages which he claimed occurred while the property was under the control of plaintiffs. Inasmuch as the record is barren of any proof of such damages, the claim does not warrant consideration.

We now pass to plaintiffs' claim for attorney's fees connected with the prosecution of this suit. Under the express provisions of the contract "either party * * * who fails to comply with the terms of this offer * * * is obligated to pay * * * all fees and costs incurred in enforcing collection and damages." Both parties, by their pleadings, have construed this provision to cover attorney's fees incurred in the instant suit as both seek such recovery. Since there is no probative evidence in the record on which a conclusion could be reasonably based as to the value of the services rendered by the attorney for plaintiffs, this feature of their demand is dismissed as of nonsuit.

For the reasons assigned, the judgment of the lower court awarding the sum of $3,000 to plaintiffs is amended by increasing the amount to $3,520, representing the return of double the deposit of $800, or $1,600, and the return of the additional payment of $2,200 from which $280 has been deducted as the fair rental value of the premises for the period of four months' occupancy, with legal interest from date of judicial demand until paid.

It is further ordered and decreed that the demand of plaintiffs for attorney's fees is dismissed as of nonsuit. All costs are to be borne by defendant.

HAMITER, Justice (concurring in part and dissenting in part).

---

2. Art. 2293: "Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties."

In view of the holding of this court in Johnson v. Johnson, 213 La. 1092, 36 So.2d 396, as well as of my dissent in Ducuy v. Falgoust, 228 La. 533, 83 So.2d 118, I am of the opinion that plaintiffs are not entitled to recover the penalty provided for in the involved contract. Otherwise, I concur in the result.