REID, Judge.
This is a suit for specific performance brought by Herd J. Miller against Mrs. Emmie McDonald Smith, widow of Julius W. Smith, and his heirs Hugh W. Smith, Mrs. Gesna Smith Murray, Veda Rae Smith, and heirs of Charles G. Smith, through his widow Mrs. Charles G. Smith. The plaintiff seeks to have the defendants transfer to him 122 acres of land, more or *84 less, :jfi Section 30, T 1 S R 10 East, St. Helena Meridian described as follows:
NW}4 of NWj4> less and except a 7 acre strip oil the north side, Lots 3 and 4 and all that part of Lot 2 lying west of the old Covington-Holmesville Road.
The suit is predicated upon a purchase agreement entered into between Julius W. Smith and his nephew, plaintiff herein, dated December 3, 1958, wherein the plaintiff agreed to purchase and Julius W. Smith, for himself and his heirs and assigns, agreed to sell the property hereinabove described for the total consideration of $14,000.00 of which the sum of $500.00 was paid with the signing of the agreement, and title was to be passed 90 days after January 1, 1959 at which time the vendee, or plaintiff, was to pay the sum of $11,500.00 to be represented by yearly mortgage notes secured by vendors lien and special mortgage, said notes to bear 4% per annum interest until paid. This agreement was duly recorded in Conveyance Book 157, page 83, and Mortgage Book 150 page 378 of the records of Washington Parish.
The petition further alleges on February 2, 1959 the said Julius W. Smith died leaving defendants herein named as his surviving spouse and forced heirs.
Plaintiff further alleges on March 25, 1959 his attorney, Delos R. Johnson Jr., wrote a letter to Mrs. Julius W. Smith advising her of the contract of sale between her late husband and the plaintiff and requesting that she notify her attorney and advising her that the plaintiff was ready and able to complete his part of the agreement.
There are several other allegations concerning the correspondence and discussions between plaintiff, his attorney and J. W. Smith Jr., one of the defendants and executor of the Succession of Julius W. Smith.
To this petition the defendants filed a prayer for oyer on December 16, 1960 asking for oyer of the alleged agreement or a certified copy thereof. There is a certified copy of the contract in the record and the prayer for oyer must have been 'satisfied by this fact.
On February 20, 1961 the defendants filed exception of non-joiner of interested parties on the grounds that the minor children of Charles G. Smith are necessary and essential parties to the cause and a further exception of no cause or right of action based on the fact that “plaintiff refused to accept title and then declined to proceed and by actual consent he is barred of this action.” Defendants in the same proceeding filed an answer which is a general denial and set up that the plaintiff had informed Mr. J. W. Smith Jr., and his attorney he was not going to institute an action, and he did not care to go through with the option transaction. The answer further sets up that by mutual agreement there was no longer a valid option and the same had been rescinded and expired, and all parties discharged from the effect thereof. The defendants further set up the defense that plaintiff could not expect or insist upon compliance when he was in default, and had mutually broken, rescinded and voided the option contract and further by his default in compliance.
In the alternative the defendants allege if it was a binding option, which was denied, then the deposit paid was earnest money and the plaintiff could not recover more than double the earnest money upon proof of default by the defendants. The defendants then asked for judgment in re-convention for $1000.00 in the event the Court held it is a valid contract and the money deposited to be earnest money, as reasonable rental, for the use and occupancy of the property.
The trial of the case was begun on July 10, 1961 and after hearing some of the testimony the Judge sustained the exception of non-joinder of parties defendant. The plaintiff then amended his petition alleging that Mrs. Charles G. Smith in her capacity as natural tutrix of the minor children of the late Charles Goodyear Smith, namely *85 Shelia Ann Smith and Lester Lynn Smith, minor children and heirs of Charles Goodyear Smith be made parties to the suit. Trial of the case was then resumed on October 11, 1961.
The Trial Judge rendered judgment in favor of the plaintiff ordering specific performance and after the filing and overruling of a motion for a new trial, the defendants prosecute this appeal.
The facts show conclusively the substance of the contract of sale between the late Julius W. Smith and Herd J. Miller. Mr. Smith died on February 2, 19S9. On March 25, 1959 Mr. Delos R. Johnson Jr., attorney for plaintiff, wrote to Mrs, Julius W. Smith, the following letter:
“March 25, 1959
“Mrs. Julius W. Smith
“Livingston, Louisiana
“Dear Mrs. Smith:
“As you know, in December 1958 we fixed up a contract of sale between Mr. Julius and Herd Miller. This contract called for the sale to be completed within 90 days after January 1st, which will be April 1st, 1959. I realize that because of the shortness of time you and your sons may not be in a position to handle this on or before April 1st. I would like for you to let your attorney know about the contract of sale so that he could write me and give me some idea as to when he thought he could have everything ready to handle this matter. As far as Herd is con-cer'ned, he is ready at any time to have the proper papers drawn up and executed.
“With warm personal regards and best wishes,
“Very truly yours,
“/s/ Delos R. Johnson Jr. “DELOS R. JOHNSON JR."
“DRJjr: W”
On March 30, 1959 Mr. L. B. Ponder Jr., attorney for the Succession of Julius W. Smith answered the letter from Mr. Johnson as follows:
“Amite, La
“March 30, 1959
“Mr. Delos R. Johnson, Jr.
“Attorney at Law
“Franklinton, Louisiana
“Your letter of March 25, 1959 addressed to Mrs. Julius W. Smith was given to me by J. ¡W. Smith, executor who advises me that all heirs are prepared to go through with the sale at this time.
“We had not prepared to send the heirs in possession right away, hence suggest you accept deed from all of the heirs.
“These heirs are as follows:
“Mrs. Emmie McDonald Smith, surviving spouse
“Charles G. Smith
“J. Walter Smith
“H. Lloyd Smith
“G. W. Smith
“Gesna Smith Murray
“Veda Rae Smith, all of whom are of lawful age
“In looking at the option I see that $2500.00 will be paid down and the balance of $11,500 will be represented by mortgage notes, and I assume that there will be three equal notes payable, one, two or three years after date.
“I also understand that the heirs except a mineral reservation of one-half of the minerals.
“Sincerely yours,
“PONDER & PONDER
“BY: /s/Barbee
“L.B.P: bs”
On April 3, 1959 Mr. Johnson answered Mr. Ponder’s letter and stated they were *86 willing to accept the deed from all the heirs with the understanding that eventually a judgment would be obtained in the Succession recognizing the heirs and sending them into possession but advising him Mr. Miller and Mr. Julius Smith Sr., had an understanding that there would be no mineral reservations and that was the reason there was no mineral reservation expressed in the contract of sale. On May 21, 1959, Mr. Johnson forwarded a deed to Mr. Ponder to be signed by the widow and heirs of Mr. Julius W. Smith transferring this property to Mr. Herd J. Miller. According to a notation on this letter the power of attorney and deed and notes were returned to Mr. Johnson on August 20,1959. After an interchange of letters Mr. Johnson wrote to Mr. Ponder calling the attention of the parties to the contract of sale and to the fact the plaintiff had been at all times ready, willing and able to go through with the contract as written.
He called attention to the fact the purpose of his delaying was in order to get a power of attorney and when it was received was found to be a general power of attorney with no description of the property, and Mr. Johnson had requested that a specific power of attorney be obtained. On November 24, 1959 Mr. Johnson sent the deed to be signed by Mrs. Smith and all the heirs of Julius W. Smith and Mr. Miller’s check for $2000.00. On January 14, 1960 Mr. Ponder wrote Mr. Johnson that he was returning the deed and check because the heirs were unwilling to consummate the sale. The other correspondence in the record does not affect the issues.
The defendants or appellants in their Brief have set up five defenses. The first one is that parties to an agreement or contract may abandon the same by mutual consent. There is no question but what this is correct law and the cases cited by appellants are on cases where there was no question but what the agreements in the cited cases had been rescinded by mutual consent. The case of Shields v. Bain, 9 La.App. 267, 120 So. 113 is a case where the plaintiff unquestionably abandoned his property and agreed with the defendant that the contract should be rescinded. This cited case has no application to the facts in the instant case.
The next case cited is Shell Oil Co. v. Hogan, 228 La. 37, 81 So.2d 761. In this case the vendor agreed to pass title to certain property on March 4, 1954 and also-agreed to execute and record instruments-with certain restrictive covenants. He failed to execute the covenants and sold a neighboring piece of property without the restrictions. The Court held that the vendor had actively breached the contract and this would have entitled the plaintiff to file suit for specific performance without putting vendor in default. However the plaintiff had waived the breach and was willing to* take title to the property, but failed to make-an offer to perform on the date fixed in the contract and the Court denied specific performance.
The next case is Bellestri v. Clark, 239 La. 713, 119 So.2d 836. In this case the defendant had a recorded contract for the purchase-of some property. He made no effort to-demand specific performance, or put the vendor in default, until after suit had been filed against him by a subsequent purchaser-from the original vendor. This case clearly has no application to the case at bar.
The defendants rely upon an alleged conversation with the plaintiff and Mr. J. W. Smith Jr., and with Mr. Miller’s and Mr. Smith’s attorneys to the fact that he was not going to take the property. Mr. Miller denies making any such statement to either Mr. Smith or Mr. Ponder. On the trial of the case on July 11, 1961 Mr. J. W. Smith testified as follows:
“Q: Did he at that time express the fact that he was not going to purchase this farm, and if so give your recollection of the discussion.
“A: He said that he didn’t want to take - it because of one thing that I had requested of him and that was. *87 one-half reservation of the mineral rights which daddy had never sold any property without reserving one-half of the mineral rights and Herd told me that Daddy didn’t reserve any of the mineral rights when he sold property before and Herd told me if I did want to reserve one-half of the mineral rights that he thought he was paying too much for the property already. Later he informed me that Daddy had reserved mineral rights on pieces he had sold prior to this and he wouldn’t go along with it.
“Q: He would not go along with the purchase of the property?
“A: Yes.
■“Q: Did you construe and understand that to mean that he had completely abandoned any rights if he did have any rights under this option contract?
“A: Yes sir.”
A reading of this portion of the testimony leads the Court to believe that Mr. Miller was not willing to purchase the property if he had to give a reservation of one-half of the minerals. His entire conduct before and after the alleged" conversation is to the contrary. We, therefore, find no merit to this contention.
The next argument of appellants is that the plaintiff who seeks specific performance under a contract to be executed in 90 days cannot extend that period of time by sitting and doing nothing,, as time is the essence of a contract of purchase and sale, especially where land values have increased by reason of mineral activities.
The record fails to bear out the contention that the plaintiff had done nothing to try to get his contract signed within the 90 day period. Mr. Smith, the original vendor, had died after the execution of the contract and on March 25, 1959, about six days prior to the end of the 90 day period the plaintiff, through his attorney, notified the widow that he was ready and willing to go through with the sale. On March 30,1959, or within the 90 day period, defendants’ attorney wrote to Mr. Johnson,, plaintiff’s attorney, that the heirs were prepared to go through with the sale at that time. There is nothing in the record to show when the Succession of Mr. Julius W. Smith was opened, but by March 30, 1959 Mr. J. W. Smith Jr., was the executor and presumably a will had been probated in the meantime. This is the first time that the question of the reservation of one-half mineral interest came up. There was nothing in the original contract about the reservation of any minerals, and Mr. Miller testified the reason it was not included in the contract was because his uncle, Julius W. Smith, did not want any of the mineral rights and wanted Mr. Miller to have them.
The appellants cite several cases, one of which is Bellestri v. Clark, supra. In the Bellestri case the prospective purchaser Clark waited from January 1955 until he filed his answer in August 1957 to attempt to enforce his claim and the Court held that this was not a reasonable time. In Flournoy v. Miller, 114 La. 1028, 38 So. 818,, the plaintiff was given an agreement to purchase property as soon as title could be investigated by his attorney, not later than the 5th of the current month. At the time set out, the 5th of February 1904, plaintiff and defendant met in the office of the Clerk of Court at which time plaintiff handed the defendant a letter from his lawyer stating certain objections to the property. No deed was executed on that date, and no offer made by plaintiff to pay the price, nor did either propose to pass the sale. Plaintiff tendered no deed and no money. The Court held that plaintiff was not entitled to specific performance because the time had elapsed.
In Harrell v. Stumberg, 220 La. 811, 57 So.2d 692 the defendant gave a contract to sell certain property within 30 days. Plaintiff did not take title within the 30 day period and the Court held that inasmuch as *88 plaintiff had not put the defendant in default within the time specified, or secured an extension of such time in writing,, the purchaser was not entitled to specific performance.
The case of Powell v. Codifer & Bonnabel, 167 La. 97, 118 So. 817 is next cited by the appellants. In this case the Court held that the purchaser had abandoned the contract by not making purchase money installments and could not enforce specific performance of contract, or recover damages in lieu thereof, over four and one-half years later following resale and transfer of land to another and increase of value thereof. The facts show that the plaintiff had defaulted in her installments and that the defendants had made efforts to locate her but the letters were returned with notation that the plaintiff could not be found. We do not think that this case is in point because in the instant case the plaintiff had made every effort to secure a deed and was only prevented from getting a deed by the fact he was called upon to give a reservation of one-half of the minerals which was not in the original contract.
The next two defenses are, first, plaintiff who seeks specific performance who is not tendering or offering to perform during the period of time as specified in the time of the contract, or put vendor in default, is without right. to claim specific performance, and secondly, plaintiff who is in default in failing to tender in accordance with the contract, both the deed and the cash payment, and in failing to make such tender in the specific time is not entitled to specific performance of a contract.
We are satisfied from the record that the plaintiff had done all he could to carry out the contract. He could not place the seller in default or secure written extension of time because Mr. Smith was dead. He did the next best tiling, and that was to call upon the widow and heirs to give him title and informed them he was ready, willing and able to proceed with the sale, and before the expiration of the 90 days he received an answer from the attorney of the widow and heirs of Mr. Smith advising him they were ready to go on with the sale but imposing a written condition in the deed which he was unable to accept.
However, the defendants in their answer in the alternative asked that if the Court finds the contract is valid, the money deposited be declared earnest money, returnable to the plaintiff in accordance with the law.
We have previously determined that the plaintiff was not in default in the contract and was prepared to proceed with the act of sale, but defendants on the other hand have been found to be arbitrarily in default, although they were in a position to convey good title to the purchase if they had wished. The sole question remaining is whether plaintiff is entitled to force defendants to perform or whether as argued by the defendants he is only entitled to double the amount of the deposit as provided by law.
Plaintiff argues whether money paid by a prospective purchaser is earnest money or partial payment is a question of fact to be determined by ascertaining the intent of the parties. Plaintiff cites Nosacka v. McKenzie, 127 La. 1063, 54 So. 351, in which it was decided the words “For and in consideration of the sum of twenty-five hundred' dollars; ten dollars of which is paid in cash by S. J. McKenzie; the balance to be paid on the second day of January, 1909”,. was intended by the parties to mean the sum of $10.00 was paid as part of the purchase price and not as earnest money. However, the Nosacka decision relied, for authority, upon Provenzano v. Glaesser, 122 La. 378, 47 So. 688, which was overruled by Maloney v. Ashaffenburg, 143 La. 509, 78 So. 761. In a discussion of the trend of jurisprudence relating to earnest money in Searcy v. Gulf Motor Co., La.App., 37 So.2d 445, it was stated:
“There is an abundance of jurisprudence on the question of the distinction. *89 between a contract of sale in connection with which a payment on account of the purchase price is made and a deposit made as earnest money in connection with an agreement to sell. We reach the conclusion that Livingston v. Southport Mills, 173 La. 120, 136 So. 289, 290, sets forth the present view of the subject and that unless there is an express stipulation to the contrary or unless the facts clearly show that the parties intended the contrary:
“ ‘ * * * Where one, under a contract to purchase, deposits money on account of the purchase price, the money so deposited is earnest money,, though intended at the time of the consummation of the agreement, by the passage of the sale, to be applied on the purchase price. * * * ’
“In a very interesting article in 6 Tulane Law Review at page 129, ‘Sales —Recovery of Deposit — Earnest Money — Art. 2463, La.Civil Code of 1870,’ appears the following:
'“ 1 * * * With the exception of the case of Nosacka v. McKenzie, 1911, 127 La. 1063, 54 So. 351, following Provenzano v. Glaesser, 1908, 122 La. 378, 47 So. 688, which case was overruled in Maloney v. Aschaffenburg, 1918, 143 La. 509, 78 So. 761, the jurisprudence in Louisiana has been uniform in establishing the rule that any money deposited by the vendee at the time of the contract to sell is presumed to be earnest money, even though it is referred to by the parties in their contract as being paid on account of the purchase price. Collins v. Desmaret, 1893, 45 La.Ann. 108, 12 So. 121; Capo v. Bugdahl, 1906, 117 La. 992, 42 So. 478; Legier v. Braughn, 1909, 123 La. 463, 49 So. 22 * * *.
“The author of that article, referring ■to another exhaustive discussion of the subject in 11 Loyola Law Journal 121, ‘The Function of Earnest Money in the Civil Law of Sales,’ says:
«<* * * The jurisprudence since Maloney v. Ashaffenburg, supra, has so firmly established the foregoing rule, that it is now necessary for the parties, if they do not wish to forfeit the right of specific performance, to incorporate an express provision in their contract negativing any presumption that the sum deposited is earnest money. * * * ’
“In this latter article the author makes the following statement (page 137):
“ ‘ * * * As a general statement, it may be said that there is a decided tendency on the part of the Supreme Court to construe an agreement to be a promise to sell rather than a contract of sale.1 “
The present law thereon is that unless the deposited money on a contract of sale is declared not to be earnest money then it is presumed to be earnest money. The contract in the instant case does not contain any declaration that the deposit of $500.00 was not to be considered as earnest money. Failure to include this clause in the contract forfeits plaintiff’s right to specific performance but as we have held that the defendants arbitrarily or voluntarily refused to proceed with the sale though they were capable of conveying good title and plaintiff was not in default, plaintiff is entitled to recover double his deposit of $500.00 as damages. Article 2463, LSA-C.C. See also Allen v. Ponchatoula Beach Development Corporation, La.App., 137 So.2d 649.
For these reasons it is ordered, adjudged and decreed that judgment of the Lower Court be reversed in so far as it orders specific performance and it is ordered, adjudged and decreed that plaintiff have and recover judgment in his favor and against the defendants for the sum of $1000.00, plus legal interest from date of judicial demand until paid, and all costs of this suit.
Reversed in part and rendered.