LANDRY, Judge.
This appeal involves claims for damages for alleged breach of a contract to buy and sell real property. Plaintiffs-purchasers, Walter L. Wells and Susie Brown Wells (Purchaser), seek recovery from defendant-seller, Mary L. Spears (Seller), of a $600.00 deposit made on the purchase price, and a like amount as penalties, for Seller’s alleged failure to comply with the agreement. Seller third partied Kerney Jenkins Realty Company (Realtor), with whom Seller listed subject property, to recover any amount in which Seller might be cast for judgment to plaintiffs in main demand. Realtor reconvened against Seller for a commission in the sum of $588.00 plus attorney’s fees.
The trial court awarded judgment to Purchaser against Seller in the sum of $600.00, and in favor of Seller against Realtor for the sum of $600.00 which Purchaser had deposited with Realtor. All other claims of Purchaser and Realtor were rejected.
Purchasers have appealed dismissal of their demand against Seller for penalties and attorney’s fees allegedly due by virtue of Seller's asserted default. Realtor has also appealed rejection of his claims in toto. We affirm.
In essence Purchaser and Realtor contend the agreement to buy and sell unconditionally committed Seller to deliver good title to subject property within the contract term, which Seller did not do, consequently Seller must be deemed in default. Conversely, Seller argues the contract stipulated an express time in which the sale was to be confected, and also contained certain conditions. Seller maintains there was no breach or default on her part because (1) no demand for performance was made within the contract term; (2) conditions required were never fulfilled within the *217 specified time; (3-) no written extension of time was ever requested or granted, and (4) Seller never refused to sell, even after expiration of the contract term.
On May 18, 1968, Purchaser executed an agreement to buy subject property from Seller for the sum of $7,800.00. The contract was arranged through Realtor, represented by Kerney Jenkins. Purchaser deposited with Realtor the sum $600.00 as part payment of the agreed price. The contract provided the sale was to take place on or before July 5, 1968. It also provided that in the event “bona fide curative work in connection with title is required, the parties herewith agree to and do extend the time for passing of Act of Sale by thirty days.” The sale was conditioned upon Purchaser’s securing a loan of $7,500.00 to pay a portion of the purchase price. The following provisions of the contract are pertinent:
“The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof.
In the event the seller fails to comply with this agreement within the time specified or for any other reason, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance at his option * * *
If this offer is accepted, seller agrees to pay the agent’s commission of 6% which commission is earned by agent when this agreement is signed by both parties and when the mortgage loan, if any, has been secured.
Either party who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent’s commission and all fees and costs incurred in enforcing collection and damages.”
It is conceded that on May 18, 1968, when the contract was signed, Purchaser gave Realtor the sum of $600.00. It is disputed whether the payment was by check or cash. It is undisputed that two days thereafter, on May 20, 1968, Purchaser made application to the First Federal Savings and Loan Association (Lender) for a loan of $7,500.00. On June 3, 1968, the application was approved by Lender’s Board of Directors for $7,000.00. On July 2, 1968, three days before the contract expiration date, Lender sent the loan application and attending documents to its attorney with the request that a title examination be made. The attorney, Edward D. Moseley, on July 10, 1968, requested an abstract of title on the property in question. Thereafter, on July 26, 1968, the attorney wrote Lender, detailing his requirements for curative work needed to perfect title to subject property. The attorney found that Seller had acquired the property while married to Andrew Spears, now deceased. The act of sale recited that Seller acquired for the benefit of her separate estate, in which declaration her husband joined. Mr. Moseley also learned that Andrew Spears left two children by his marriage to Seller and three offspring of a former marriage. One of the children of the former marriage was found to be an interdict. The attorney considered that the declaration by Seller’s husband was not binding upon his children, consequently, the attorney required a quitclaim from each of the children, and judicial authority for Andrew Spears, Jr., Curator of the interdict, to execute a quitclaim deed on the interdict’s behalf. Considerable dispute exists regarding the events following Mr. Moseley’s letter of July 26, 1968.
Kerney Jenkins testified in effect that he listed Seller’s property on March 23, 1968. At this time, Seller informed him that Seller was Curatrix for a minor who had an interest in subject property, but that he, Jenkins, knew nothing about the interdict. *218 He conceded the sale was never completed, and also acknowledged that Seller never indicated she did not wish to sell. He further acknowledged that Seller never requested an extension of time to do the required curative work, and that he himself never made such a request. He stated that when advised by the Lender concerning the state of Seller’s title, he spoke to Seller about the matter, and Seller agreed to take the necessary curative steps. He could not state precisely when Seller was first contacted in this regard, but that it was right after July 26, 1968. He acknowledged having received $600.00 cash from Purchaser when the agreement was signed, and denied having been requested by either Seller or Purchaser to return the deposit. After refutation of his denial by Seller and Purchaser, Jenkins again testified and admitted that Purchaser had made demand upon him for the return of the deposit.
Walter Wells testified that upon signing the agreement he gave Jenkins a check for $600.00. He could recall no dates in particular, but stated he talked with Seller about the sale on several occasions. Seller informed him that subject property was tied up with another piece of land, and that Seller could not pass the sale until the other property was cleared up. He also stated Seller assured him that Seller was working on the problem. Wells admitted that his loan application was approved for only $7,000.00, but maintained he had the other $500.00 necessary, and could have completed the sale if the $7,000.00 loan had been made. He also acknowledged that no extension of the agreement was ever discussed. Wells stated that he asked Jenkins for the return of the deposit on several occasions, and that Jenkins refused. He further testified that on March 28, 1969, he purchased another piece of property, and was no longer interested in subject property.
In substance Susie Wells corroborated her husband’s testimony regarding his attempts to obtain a return of his deposit from Jenkins.
Seller testified that she stood ready to pass title at any time called upon. She stated that she was never requested to pass a sale until February, 1969, when she received a demand letter from Purchaser’s attorney. During the entire time of the contract, she had no request to execute the sale, or for any curative work whatsoever. She admitted knowing her stepdaughter had some claim to subject property, but contended that Jenkins assured her the matter could be taken care of. She maintained it was not until October, 1968, that she learned curative work was necessary, and that she was so informed by her own attorney.
Samuel Locks, Seller’s brother, testified that Jenkins had grown up with the Locks children and was thoroughly familiar with the Spears’ family history. He also stated that he requested Jenkins to return Wells’ deposit.
The trial court initially held that all concerned had waived the time limitations of the contract, and that Realtor failed to return Purchaser’s deposit within a reasonable time. On this basis, the trial court rendered judgment as follows: (1) in favor of Purchaser against Seller for $1,200.00, which included Purchaser’s deposit and a like penalty; (2) in favor of Realtor against Seller for a commission of $588.00, and attorney’s fees of $150.00, and (3) in favor of Seller against Realtor for $600.00. The judgment also ordered Realtor to return Wells’ $600.00, and credited Seller’s judgment against Realtor in said amount.
On rehearing, the trial court reversed its decision upon finding that the contract expired, by its own terms, on July 5, 1968, because no sale took place on or before that date. The court also noted that no extension of time had been given in writing as required by law consequently the agreement became null and void. Judgment was then rendered in favor of Purchaser against Realtor ordering a return of Purchaser’s deposit.
*219 As found by the trial court, the last day for passing the sale was July 5, 1968, a Friday. He also found that if curative work were required, the time for passing the sale would be extended 30 days to Sunday, August 4, 1968, or the following Monday, August 5, 1968. Since Lender did not request a title examination until July 2, 1968, its letter of request would not ordinarily have been received by its attorney until July 3. July 4, being a legal holiday, no title work could have been performed on that date. Therefore, at most, only two days, July 3 and 5, remained for examination of the title and performance of required curative work. However, the abstract of title was not ordered until July 10, after the contract term expired, and no written extension of the contract was requested or granted. Moseley’s letter detailing curative work was written July 26, 1968, a Friday. If it were received by Lender the following day, no action could have been taken thereon until Monday, July 29, 1968. Subsequent to July 29, 1968, Lender notified Realtor, who in turn on an undisclosed date, notified Seller. We agree with the trial court’s finding that the record does not establish whether Seller was notified of title defects on or before August 5, 1968. The burden of proof in this regard rests upon Purchaser and Realtor. We find that neither has discharged this burden by a preponderance of evidence as required by law.
A contract to buy and sell real property is not valid unless made in writing and any extension of time thereof must also be in writing. Harrell v. Stumberg, 220 La. 811, 57 So.2d 692.
When an obligation is contracted conditioned upon the occurrence of a stipulated event within a specified time, the agreement is terminated if the time expires before the required event transpires. LSA-C.C. art. 2038.
A contract has the force of law between the parties and the courts are bound to give effect thereto according to the intent of the parties as manifest in the agreement. LSA-C.C. art. 1945.
All provisions of a contract must be construed together and given effect, if possible, according to the will of the parties. LSA-C.C. art. 1945.
We construe subject contract to mean that the sale was to be passed on or before July 5, 1968, as stated therein. We also find that the parties contemplated that if a demand were made upon Seller on or before July 5, 1968, for curative work found necessary, Seller would have thirty days in which to comply. The record establishes beyond doubt that at no time on or before July 5, 1968, did either Purchaser or Realtor call upon Seller to pass the sale or advise as to the necessity of curative work on the title. Nor does the record show that at any time, even up to the time of trial, did Seller decline to transfer title. The only demand upon Seller came in February, 1969, many months after the contract expired by its own terms.
It is acknowledged that Seller’s attorney did in fact do some curative work upon the title. It is clear that this activity took place long after the contract expired, and no written extension thereof was ever requested or granted.
Under the circumstances of this case, Seller’s knowledge of the condition of the title is a matter of no moment. Seller was never called upon to pass title within the contract term. She was never timely requested to perform any curative work whatsoever. Under the terms of the contract, she had a period of thirty days to correct any defects in the title if called upon to do so. Her obligation to do so never arose. Most importantly, Seller was never placed in default for an alleged failure to perform.
Purchaser and Realtor cite numerous cases in support of their contentions that *220 Seller should be held liable herein. We find all the cited authorities distinguishable in that in each instance an operative factor occurred within the contract period.
In Ducuy v. Falgoust, 228 La. 533, 83 So.2d 118, plaintiff-vendor sued for specific performance of an agreement to buy and sell real property after having unsuccessfully tried to remove a cloud from his title. The court found that the agreement obligated plaintiff to return defendant’s deposit and a like amount as penalty despite plaintiff’s good faith efforts to cure the title.
Poche v. Ruiz, 239 La. 573, 119 So.2d 469, involved an agreement to sell by a certain date coupled with a provision for a 90 day extension should curative work be found necessary. Demand for curative work was made, and an extension duly executed. Later, when vendor could not deliver valid title, purchaser’s deposit was ordered refunded with a like deposit.
Williams v. Terese, La.App., 120 So.2d 80, held that a purchaser was entitled to either specific performance or return of his deposit together with penalties where the Seller did not comply with the agreement within the contract period. In Williams, demand for specific performance was made upon the vendor who owned only an undivided half interest in the property. The demand was apparently made within the contract period inasmuch as the court found vendor liable for the penalty.
In Pierre v. Chevalier, La.App., 233 So.2d 61, demand for the performance of curative work was made while the contract was still in existence. Liability was imposed on the Seller pursuant to the holding in Ducuy v. Falgoust, above.
Seller’s contention that the present case falls within the ambit of Johnson v. Johnson, 213 La. 1092, 36 So.2d 396, is without foundation. We note that in Ducuy v. Falgoust, above, the Supreme Court expressly declined to follow the rule espoused in Johnson, above.
Our decision herein is predicated solely upon the terms and conditions of the contract in question. It is of significance that subject contract provides it shall become null and void if Seller could not furnish good title within the specified time, in which event Purchaser was entitled to return of his deposit. This clear and precise clause, although seemingly contradictory to other provisions of the agreement, must be accorded some meaning. As applied to the facts of this case, Seller could not comply since she was not requested to do so within the contract term. We find that since no action whatsoever was taken by any interested party within the contract term, the agreement expired according to its own provisions.
By the terms of the agreement, Realtor’s commission was never earned. The contract clearly provides that the commission was earned “when the mortgage loan, if any, was secured.” A loan was not timely obtained. Since the failure to timely secure the loan is not attributable to the fault of either Purchaser or Seller, Realtor is not entitled to a commission.
The judgment of the trial court is affirmed; all costs of these proceedings to be paid by defendant, Mary Spears, and third party defendant, Kerney Jenkins Realty Company (Kerney Jenkins), in equal proportions.
Affirmed.