ELLIS, Judge:
Geraldine Gordon Thompson and William Eugene Thompson separated from each other on October 7, 1974. At that time, they were the owners of a house and an acre of land in Tangipahoa Parish. On October 15, 1974, Mr. Thompson sold the property to Marion Eugene Thompson, his father, the consideration recited being the assumption of first and second mortgages bearing against the property. The act of sale was filed for record on October 17, 1974.
On October 15,1974, Mrs. Thompson filed a suit for separation from bed and board against Mr. Thompson, and obtained a restraining order, preventing him from alienating the community property. The suit and the order were served on him on October 17, 1974. This suit to set aside the sale of October 15th was filed on October 30, 1974. Shortly thereafter, Mr. and Mrs. Thompson reconciled. The reconciliation was short-lived, however, and the parties were divorced in a subsequent proceeding.
This case was eventually tried on its merits on June 30, 1978, and judgment was thereafter rendered in favor of defendants, dismissing plaintiff’s suit, and she has appealed.
*1200 Plaintiff urges two basic grounds for the nullity of the sale. First she contends that it was fraudulently made in violation of the prohibition contained in Article 150 of the Civil Code; and second, it is argued that the transfer to the elder Mr. Thompson was a simulation.
Article 150 of the Civil Code provides: “From the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time, shall be null, if it be proved that such alienation was made with the fraudulent view of injuring the rights of the wife.”
It is not disputed that, at the time of the sale to the father, Mr. Thompson had the right to alienate the immovable property of the community. Civil Code, Article 2404. It is also settled that Mrs. Thompson is not a “third person” with respect to sale of community property, so that it is not important that the sale was registered subsequent to the filing of the separation suit. Provenzano v. Glaesser, 122 La. 378, 47 So. 688 (1908); Porterfield v. Parker, 189 La. 720, 180 So. 498 (1938); Smith v. Routon, 181 So. 684 (La.App.2nd Cir. 1938).
We further find that the filing of the suit can have no effect on the validity of the sale because the subsequent reconciliation of the parties had the effect of extinguishing the action. Article 152, Civil Code. Finally, we find no evidence that the sale was made with “the fraudulent view of injuring the rights of the wife.”
Plaintiff bases her claim that' the sale was a simulation on certain testimony of her former husband in an alimony rule held prior to their reconciliation. At that time, which was after the sale to his father, Mr. Thompson testified that he was paying the house note and a second mortgage note; that he considered these payments a community obligation; that he had to pay for the house; and that he considered it his home.
In this suit, William Eugene Thompson explained that, after the sale, he had agreed to pay the first and second mortgage notes in lieu of rent, and that the house was his home, although he no longer owned it. After the reconciliation, the parties continued to live in the house and pay the notes until they finally separated. Thereafter, they both moved out, and Marion Eugene Thompson, the father, rented the house to other persons. Mr. Marion Thompson testified that after he agreed to take title to the house, he contacted the homestead association to see if the transfer was all right. The homestead agreed, and the transfer then took place. He further testified that he could not afford to pay the notes without some rental, and that his son agreed to pay the notes in lieu of rent. When his son moved out he rented the house to other persons, and paid the notes himself. He exhibited a receipt showing that he had paid off the second mortgage in full. He testified that he was the owner of the property.
A simulated sale has been said to be “one which has no substance at all, or is purely fictitious and a sham, an act of mere pretense without reality.” Spiers v. Davidson, 233 La. 239, 96 So.2d 502 (1957).
In this case, although Mr. William Thompson’s testimony, and his subsequent remaining in possession of the property and payment of the mortgage installments cast suspicion on the validity of the transfer to his father, the subsequent actions of the Thompsons make it clear that no simulation was intended, and that a genuine transfer of title to Marion Thompson took place.
The judgment appealed from is therefore affirmed, at plaintiffs cost.
AFFIRMED.