311 So.2d 604 (1975)
EXECUTIVE HOUSE BUILDING, INC.
v.
OPTIMUM SYSTEMS INCORPORATED and Automated Systems, Inc.
No. 6608.
Court of Appeal of Louisiana, Fourth Circuit.
March 24, 1975.
Rehearing Denied May 15, 1975.
Writ Refused June 23, 1975.
*605 Mmahat, Gagliano, Duffy & Giordano, Lucas J. Giordano, Metairie, for plaintiff-appellee.
Monroe & Lemann, Ben. R. Slater, Jr., William J. Hamlin, New Orleans, for defendants-appellants.
Before LEMMON, STOULIG and MORIAL, JJ.
STOULIG, Judge.
Plaintiff, Executive House Building, Inc., a lessor, was awarded a judgment in excess of $150,000[1] against Automated Systems, Inc., the lessee, and Optimum Systems Incorporated, its surety for rental due under a written contract of lease. From this adverse judgment the defendants have appealed.
Plaintiff's petition, filed January 23, 1973, alleged the lessee defaulted on the contract by failing to pay the January rental on the first day of that month and this breach activated a rent acceleration provision that made all rents through the unexpired lease period ending August 31, 1975, immediately due and exigible. Defendants denied the default, claiming a check for the January rent was issued on January 17, 1973, some six days prior to the filing of suit, which was accepted and negotiated by lessor. Alternatively, they averred that the default was cured by the payment of the penalties specified in the lease for the late payment of monthly rentals. Finally defendants reconvened for a judgment declaring that the action of plaintiff on or about January 23, 1973 in changing the locks on the doors to, and the padlocking of, the leased premises, without lessee's knowledge or consent, constituted an unlawful eviction or disturbance of peaceable possession entitling lessee to a rescission of the lease. Reconvenors sought the return of $15,281.67 in rental (for the months of February, March and April, 1973) and $7,426.65, the value of the air-conditioning unit. Defendants appealed the judgment dismissing their demand for return of the rental and abandoned the remaining claim of the reconventional demand.
The contract at issue is a printed commercial lease between plaintiff and defendants whereunder plaintiff rented space in the Executive House Building to Automated Systems, Inc., for the term March 1, 1971 through August 31, 1975. Optimum Systems Incorporated (OSI), a California-based *606 corporation, opened a branch in New Orleans Automated Systems, Inc.) to fulfill a contract with the United States Department of Agriculture. In 1972, upon learning the government contract would terminate that year, OSI decided to close its New Orleans operation because it lost the only substantial client that it served from this office. Realizing it was contractually obligated for the payment of $5,093.89 monthly rental, OSI representatives sought to reduce or be relieved of their liability under the lease. On June 13, 1972, defendants submitted a written offer to release the leased premises to plaintiff so that it could sublease to other tenants and apply the rentals to the outstanding balance due by defendants.[2] In the fall of 1972, William Roach, OSI's executive vice president, tried to negotiate a cash payout for full release of all liability on the contract, but he was unable to arrive at a figure mutually agreeable to him and John Mmahat, plaintiff's president.
With the full knowledge of lessor, OSI vacated the premises in November 1972, but continued paying the monthly rental. During December the premises were occupied by OSI's local manager, who was assisting in closing its New Orleans office and simultaneously was also handling his personal business affairs with the consent of the lessee.
Plaintiff, in January 1973, changed the locks on the doors to the leased premises without the authorization, consent or knowledge of defendants, ostensibly to prevent theft of lessee's property. However, commendable plaintiff's motive, in the absence of some compelling circumstances that would not admit of delay, the lessor is contractually obligated to consult with its lessee before assuming the responsibility of protecting the lessee's property without being requested to act if, by so doing, it violates the tenant's right to peaceful possession of the premises. As a result of this action by the plaintiff, defendant's manager was unable to gain access to OSI's office to obtain some company records needed for income tax purposes. Later one of the California-based officers arranged for his entry.
After a trial on its merits, judgment was rendered in favor of plaintiff and the reconventional demands of defendants were dismissed. Our reversal of this judgment is grounded solely on the interpretation of the lease, and therefore we are not required to pass upon the correctness of the trial judge's factual conclusions or his application of the law.
The contract, furnished by plaintiff's agent Medallion Realty, Inc. (whose controlling interest is owned by plaintiff's stockholders), contains four provisions defining the respective rights of the lessor and lessee in the event of a breach. We first quote excerpts from three printed clauses:
"13. Should the Lessee at any time * * * fail to pay the rent * * * the rent for the whole unexpired term of this lease shall at once become due and exigible without putting said Lessee in default. And the Lessor shall have the right, without notice to the Lessee, and without in any way being deemed guilty of trespassing, and without, in any manner, being held accountable to the Lessee, to forthwith take possession of the leased premises and to prevent the use of the same by the Lessee or any person claiming under him * * *.
* * * * * *
"14. Failure to strictly and promptly enforce any of these conditions shall not operate as a waiver of Lessor's rights, Lessor expressly reserving the right to always enforce prompt payment of rent or commissions or obligations or to cancel this lease as provided herein, regardless *607 of any indulgences or extensions previously granted. The receiving by Lessor, or Lessor's representative of any rent in arrears, or after notice or institution of any suit for possession, or for cancellation of this lease, will not be considered as a waiver of such notice of suit, or of any of the rights of Lessor.
"28. Should the premises be vacated or abandoned by Lessee because of ejectment for breach hereof, or otherwise, or should the Lessee begin to remove personal property, goods or equipment, to the prejudice of the Lessor's lien, then the rent for the unexpired term, with attorney's fees, shall at once become due and exigible and Lessor, at his option, has the right to cancel the lease, or reenter and let said premises for such price and on such terms as may be immediately obtainable and apply the net amount realized to the payment of the rent."
We note that under covenant 13 the lessor reserves to itself the right to demand accelerated rental for the unexpired term and to immediately take possession of the leased premises and deny further use to the lessee, even though it is demanding rent for the balance of the life of the lease.
Under section 28, the lessor's rights are not quite as sweeping because it stipulates the lessee's breach gives the plaintiff the right to cancel the lease or to re-let the premises to apply the proceeds to the unpaid rental.
Apparently paragraph 14 preserves the rights conferred on the lessor by 13 and/or 28 even if payment is tendered and accepted after suit is filed.
As between 13 and 28, where they conflict, the provisions of 13 govern.
This conclusion is validated by the typewritten addendum bearing the number 56 inserted at the end of the printed lease form. It reads:
"If this lease goes into default, then all rights and privileges of the Lessee shall also cease and shall automatically become inoperative."
Where the typewritten insertion conflicts with the printed portion of the contract, the typewritten addendum governs.[3]
Thus under 13 and 56, once the lessee breached the lease it lost all rights but retained all of the obligations of the contract. Obviously we will not uphold this lease as written because the quoted provisions are contrary to C.C. art. 2692.[4] The lessor cannot demand payment of rent for the unexpired term and at the same time assert its right to possession of the leased premises. See 327 Bourbon Street, Inc. v. Pepe, Incorporated, 257 La. 577, 243 So.2d 262 (1971); and Maggio v. Price, 1 So.2d 404 (La.App.1st Cir. 1941). When the lease states the lessee forfeits all rights in the event of a default, we must construe these clauses as cancellation provisions because if the lessee is deprived of peaceable possession, the consideration for the contract fails. It necessarily follows the lessee's obligation to pay rent for these rights and privileges conferred by the lease is extinguished.
In a contract of lease the primary obligation of the lessor is to deliver and maintain the lessee in peaceful possession of the leased property. Under the forfeiture provision of 56, the lessee is deprived of the right of future or continued possession
* * * * * *608 and therefore the lessor is estopped from asserting the right to claim the accelerated rent for the unexpired term. Otherwise, the lessor would be permitted to recover the rent for the unexpired term and simultaneously would enjoy the benefit of possession of the premises. If we do not treat 13 and 56 as cancellation clauses activated by plaintiff's putting the lessee in default by filing suit, we would in effect release the lessor from all obligations and unfairly compel the lessee to perform unilaterally.
Plaintiff's acceptance on March 1, 1973 of defendant's offer of June 13, 1972, authorizing lessor to re-lease the premises, does not alter or change our construction of the legal effect of the contract of lease. The offer was accepted several weeks after the filing of this suit and the acceptance mailed to defendants at the address of the vacated premises, rather than the home office in Palo Alto, California, which address was also known to the lessor. Be that as it may, this act was an exercise in futility because at this point the object of the defendant's offerthe right to sublethad been extinguished by the terms of the lease itself. A breach having occurred, under the explicit terms of the contract of lease the defendant suffered a forfeiture of all its rights and privileges as lessee, including possession. Its prior offer of authority to lessor to re-lease the leased premises was no longer legally efficacious and could not be converted in to an executory binding contract by the post-default acceptance of lessor. C.C. art. 1896.[5]
For the reasons assigned the judgment appealed from is annulled and it is now ordered, adjudged and decreed that there be judgment in favor of defendants, Automated Systems, Inc., and Optimum Systems Incorporated, in the sum of $15,281.67 with legal interest from judicial demand until paid. Plaintiff is to bear all costs.
Annulled and rendered.
LEMMON, J., concurs with written reasons.
LEMMON, Judge (concurring).
I concur in the result. I do not believe, however, that the quoted provisions of the lease contract operated automatically to effect a termination of the lease when defendants defaulted by failing to pay the January payment timely. A lessor can validly contract both for the right to sue for accelerated rent and for the right to seek cancellation of the lease, and it is immaterial whether these rights are provided for in the alternative or in the disjunctive. What is material is that the lessor cannot exercise both of these rights based on the same default. 327 Bourbon St., Inc. v. Pepe, Inc., 257 La. 577, 243 So.2d 262 (1971).
In the present case the lessor sought accelerated rent by suit filed on January 23, 1973. About the same time (or slightly before) the lessor constructively cancelled the lease by denying the lessee the right of occupancy. Since the judicial demand for accelerated rent over the remainder of the term of the lease contract is inconsistent with the actual eviction and effective cancellation of the contract, the lessor's, demand for accelerated rent beyond the date of effective cancellation must be dismissed.
NOTES
[1] The computation of the accelerated rental for the unexpired term was reevaluated and adjusted to reflect the increased cost of living as required by the contract of lease. After suit was filed, part of the premises formerly occupied by Optimum Systems Incorporated was leased to various tenants and the defendant was given credit for the rentals collected. In view of the result we reach, no need exists to itemize these particular sums.
[2] By its terms the offer was irrevocable 9 months from date (March 13, 1973) and was accepted by plaintiff on March 1, 1973, some 8 months and 18 days after its submission and 1 month, 6 days after the institution of this suit.
[3] Dean v. Pisciotta, 220 La. 725, 57 So.2d 591 (1952); Mirandona v. Aaxico Airlines, Inc., 143 So.2d 805 (La.App.4th Cir. 1962).
[4] C.C. art. 2692: "The lessor is bound from the very nature of the contract, and without any clause to that effect:

"3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease."
[5] C.C. art. 1896: "By the cause of the contract, in this section, is meant the consideration or motive for making it; and a contract is said to be without a cause, whenever the party was in error, supposing that which was his inducement for contracting to exist, when in fact it had never existed, or had ceased to exist before the contract was made."