CHIASSON, Judge.
Plaintiff-appellant, Emile R. Poissenot, appeals the decision of the trial court dismissing his suit for the return of a $2,000.00 deposit made by him in accordance with a purchase agreement and granting judgment in favor of the defendants-appellees, Guild-craft Homes, Inc. and C. Derbes Smith, Inc., on their respective reconventional demands.
The plaintiff entered into a written contract on June 30,1977, to purchase a lot and home which was to be constructed by Guild-craft Homes, Inc. in Yester Oaks Subdivision located in Slidell, Louisiana. The agreement is evidenced by a standard real estate contract furnished by Ms. Smith, a realtor with C. Derbes Smith, Inc., and by a supplement to the contract executed on July 2,1977. The contract provided that an act of sale would be passed before the lender’s notary between September 15,1977 and October 1, 1977.
The agreement for the sale of the lot and house was conditioned on the ability of Mr. Poissenot to secure a loan in the amount of $27,000.00 at a rate of interest not to exceed nine percent (9%). The suspensive *661 condition was met by the receipt of a loan commitment from the First Homestead and Savings Association of New Orleans on July 5, 1977.
In addition, the agreement required that Guildcraft be furnished a certificate of reasonable value (CRV) from the Veterans Administration. This was accomplished by a CRV dated August 5, 1977 from the Veterans Administration. With all of plaintiff’s obligations met, construction on the house began.
October 1,1977 passed without any action being taken by either party. On November 2, 1977, Cynthia D. Smith, president of C. Derbes Smith, Inc., the realtor handling the sale, wrote a note to Guildcraft pointing out some irregularities in the still unfinished house. These had been brought to her attention by the plaintiff.
A similar note was sent on November 25, 1977. On November 11,1977, Mr. Poissenot had signed a request sheet giving specifications for the color and decoration scheme of the house. He stated that this was necessary due to the fact that the original had been lost.
On or about December 1,1977, Ms. Smith advised plaintiff that the house would probably not be ready until after Christmas. Plaintiff then consulted counsel, who directed the following letter to C. Derbes Smith, Inc. on December 7, 1977:
“Mr. Emile Poissenot has requested my assistance in securing the return of his deposit in the sum of $2,000 for the purchase of the subject realty. The Act of Sale for this property was to be passed under the terms of the contract not later than October 1, 1977. Mr. Poissenot had performed his part under the Agreement to secure financing and stood ready to purchase this property as of such date. “As the time for completion of construction has long since passed, it is our position the Seller has breached the bargain. If payment of the $2,000 is not received within 15 days, we intend to file suit in St. Tammany Parish for the return of the deposit plus an equal amount to be paid as penalty by the Seller and all reasonable attorney’s fees and costs which we incur.”
The purchaser in this agreement, the plaintiff in this action, now seeks the return of the $2,000.00 deposit and in addition an equal amount as penalty, plus reasonable attorney’s fees and costs of this action according to the terms of the contract. The defendant, C. Derbes Smith, denied the allegations of the plaintiff and reconvened for $2,345.00, representing the agent’s commission. The defendant, Guildcraft Homes, denied the plaintiff’s allegations and reconvened for $6,345.00, the amount of the deposit, penalties, attorney’s fees, costs and the agent’s commission.
The trial court found that the supplement to the contract had modified the initial contract since it was typewritten in regards to when the contract was to be carried out. In addition, the court found that the purchaser, plaintiff, could not cancel the agreement unless he could not secure the specified loan. Having secured the loan, he was unable to cancel the agreement without facing the consequences of a breached contract. Finding further that the plaintiff breached the contract by the December 7, 1977 letter, the trial court held the plaintiff to be indebted to Guildcraft in the amount of $2,000.00, plus $250.00 attorney’s fees and for all costs of the proceedings. In addition, plaintiff was indebted to C. Derbes Smith in the amount of $2,345.00, plus $250.00 in attorney’s fees.
The trial court found that the contract entered into was a printed form contract and the supplement was a typewritten agreement. The significance of this distinction is that the Louisiana jurisprudence has favored the typewritten provisions of a contract over a printed provision of a contract when there is a conflict between the two. Executive House Bldg., Inc. v. Optimum Systems Inc., 311 So.2d 604 (La.App. 4th Cir. 1975) cert. denied 313 So.2d 847 (La.1975).
Notwithstanding this rule, we find that the two provisions which are alleged to be in conflict, lines 26 through 28 of the *662 contract and paragraph 1 of the supplement, are both typewritten. The reason that this is so is that the date the act of sale was to be passed is typed in the blanks provided in the form contract. We deem this to be a typewritten provision of the contract and of equal importance with paragraph 1 of the supplement since the parties are the ones that provided the substance of what is typed therein.
The following excerpts of these provisions from the agreement are as follows:
“26. Act of sale at expense of purchaser to be passed before lenders. Notary, at any time after
“27. Sept. 15 19 77, and not later than Oct. 1. 19 77. In the event bona-fide curative work in connection with title

“28. is required, the parties herewith agree to and do extend the time for passing of act of sale by forty-five days.”

“1) If the house is not substantially complete within 130 days from date of Seller’s receipt of a V.A. copy of an approved C.R.V. and firm written commitment for a permanent loan to purchaser from a mortgage lender in conformity to lines 13 and 14 of contract, then damages at the rate of $5.00 per day will be assessed against the seller and deducted from the sale price of the property until substantial completion.”
In addition to that fact, we do not find the two provisions of the contract to be in conflict. Lines 26 through 28 establish a time frame, mutually agreed to by both parties, in which an act of sale was to be passed before the lender’s notary. Paragraph 1 of the supplement refers to a penalty clause imposed on the seller if he fails to complete the house within 130 days of receipt of a CRV from the Veterans Administration. This paragraph is in no manner a substitute time frame for the passing of an act of sale.
Counsel for appellee, in oral argument, has asked us to assume that the date for passing an act of sale would be 130 days after seller’s receipt of a CRV. We do not need to assume a date for passing an act of sale if there is one already provided for in the contract. The construction of the contract in this manner will give meaning to all the provisions of the contract. La.C.C. art. 1955 and Farrell v. Hodges Stock Yards, Inc., 343 So.2d 1364 (La.1977).
The next contention is that appellant could not sue for return of his deposit since there was no putting in default of the defendant on the part of the plaintiff-purchaser. A thorough review of the circumstances of this case reveals that a putting in default was practically impossible on the part of Mr. Poissenot.
In this commutative contract, plaintiff must have been willing and able to perform his part of the contract. Louisiana Civil Code Article 1913 states:
“In commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must, at the time and place expressed in, or implied by the agreement, offer or perform, as the contract requires, that which on his part was to be performed, otherwise the opposite party will not be legally put in default.”
Since the contract did not state that the nonexecution of the sale at that time would automatically place the other party in default under La.C.C. art. 1911(1), the only other method left was under article 1911(2), which requires a demand by one of the parties. But between September 15, 1977 and October 1, 1977, the house was in no condition to be sold by the seller to the purchaser. Therefore, the seller could not deliver the house to Mr. Poissenot. In turn, Mr. Poissenot, who had obtained the loan commitment and CRV, was not able to fully perform since no lending institution would have lent him money for an uncompleted house.
As time progressed, the putting in default was still unavailable to the purchaser *663 either to sue for damages or to sue for rescission, if there is such a requirement,[1] because of the seller’s failure to finish the house. Neither party contemplated that this contract would be for an indefinite period of time without some way of being exculpated from it.
A similar situation was presented in the case of Kennedy v. Pope Park, Inc., 109 So.2d 514 (La.App.Orl.1959) in which the court stated:
“We think that it would be absurd to hold that Kennedy, on April 1st should have demanded title when, as a matter of fact, not only had the building which he was to buy not been completed, but he could not have paid for it because Pope had not obtained for him the necessary loan.
“We agree with the following statement which the District Judge made to counsel for defendants:
‘ * * * This contract was conditioned on a loan being secured and until the loan was secured in the usual way so you could pass the act of sale he couldn’t take title. If it wasn’t completed until after April 1st and there was no written contract, then the contract falls as a matter of law.’
“We feel certain that when the District Judge stated that if there was no written contract, the contract falls, he meant that if there was no ‘extension’ of the written contract.” [2]
The same rationale is expressed in Jaffe v. Wood, 247 So.2d 229 (La.App. 4th Cir. 1971).[3] There the court held:
“... Since neither party placed the other in default as provided for in the agreement, the agreement lapsed by its own terms and purchaser is not entitled to attorney’s fees as provided for in the contract. Purchaser had only a right to demand the return of his deposit of ten percent or $5,800.00.
“A demand was made by suit being filed and seller did not tender the amount of the deposit. Purchaser was required to litigate for the return of his own money. Therefore purchaser is entitled to all costs in this suit.”
Following the guidance of these two cases, we deem that the terms of this contract before us have lapsed on its own, since neither party was able to or did place the other party in default and no written extension of time was granted. The purchaser is entitled to the return of his deposit in the amount of $2,000.00 with legal interest from date of judicial demand.
Judgment is rendered herein in favor of Emile R. Poissenot and against Guildcraft Homes, Inc. in the sum of $2,000.00, together with legal interest thereon from date of judicial demand and all costs. The recon-ventional demands of Guildcraft Homes, Inc. and C. Derbes Smith, Inc. are dismissed at their costs.
REVERSED AND RENDERED.

.The question of whether a putting in default is a prerequisite for suit for dissolution or rescission of a contract is a hotly contested subject. See La.C.C. arts. 1912, 2046, 2047, 2485, 2516 & 2561. Murray v. Barnhart, 117 La. 1023, 42 So. 489 (1906); Jennings-Heywood Oil Synd. v. Houssiere-Latreille Oil Co., 119 La. 793, 44 So. 481 (1907); Hibbert v. Mudd, 294 So.2d 518 (La.1974) (Justice Barham’s dissenting opinion); J. Denson Smith, The Cloudy Concept of Default, Twelfth Annual Institute on Mineral, La. (1965). Compare Watson v. Feibel, 139 La. 375, 71 So. 585 (1916); A Theoretical Evaluation of Louisiana Default Law in Conventional Obligations, 46 Tul.L.Rev. 948 (1972).

. It is the jurisprudential rule that any modification or extension of time to a written purchase agreement or contract to sell immovable property must be in writing. La.C.C. arts. 2275 and 2440; Di Cristina v. Weiser, 215 La. 1115, 42 So.2d 868 (1949); Hoth v. Schmidt, 220 La. 249, 56 So.2d 412 (1951); Parker Mead, Inc. v. Cutrer, 239 So.2d 729 (La.App. 1st Cir. 1970). Distinguish Luna v. Atchafalaya Realty, Inc., 325 So.2d 835 (La.App. 1st Cir. 1976).

. See also Fox v. Doll, 221 La. 427, 59 So.2d 443 (1952).